**BULKMATIC TRANSPORT CO., Petitioners,**

v.

**DEPARTMENT OF STATE REVENUE and Kenneth L. Miller in his capacity as Commissioner of the Indiana Department of State Revenue, Respondents.**

No. 49T10–9508–TA–00085.

Tax Court of Indiana.

Feb. 13, 1998.

Robert W. Loser II, Patrick M. O'Brien, Brett R. Fleitz, Steers Sullivan P.C., Indianapolis, for Petitioners.

Jeffrey A. Modisett, Attorney General, David A. Arthur, Deputy Attorney General, Indianapolis, for Respondents.

FISHER, Judge.

Bulkmatic Transport Co. (Bulkmatic) filed this original tax appeal on August 15, 1995 challenging the constitutionality of a 15% exemption from Indiana's motor carrier fuel tax. Bulkmatic seeks a refund of taxes it paid for the period of July 1, 1991 through June 30, 1994. Both the Department of State Revenue (Department) and Bulkmatic have moved for summary judgment, and on July 19, 1996, this Court heard oral argument on the cross motions.

Bulkmatic contends that the legislature rendered IND.CODE ANN. §§ 6–6–4.1–4(d), – 4.5(d) (West Supp.1997) unconstitutional when it limited the availability of the exemptions contained therein to only those motor carriers who use auxiliary or "power take off" equipment (PTO equipment) *in Indiana.*[1] *See* Act of May 6, 1991, No. 69, §§ 12–13, 1991 Ind. Acts 1787, 1797. Previously, the exemption was available to any carrier using PTO equipment regardless of where that equipment was used. Bulkmatic argues that this "in Indiana" limitation violates the Commerce Clause, U.S. CONST. art. I, § 8, cl. 3, the Due Process Clause, U.S. CONST. amend. XIV, § 1, the Equal Protection Clause, *id.,* and Indiana's Due Course of Law Clause, IND. CONST. art. I, § 12.

The Department of State Revenue (Department) argues that limiting the exemption to only those motor carriers using PTO equipment in Indiana does not discriminate against interstate commerce and does not violate any of the above cited constitutional provisions. This Court, finding the Commerce Clause issue dispositive, holds that the in Indiana limitation of the exemption for the use of PTO discriminates against interstate commerce. Accordingly, this Court GRANTS Bulkmatic's Motion for Summary Judgment and DENIES the Department's Motion for Summary Judgment.

## FACTS

Bulkmatic is a commercial trucking company that operates trucks both within and without Indiana. Bulkmatic primarily transports food products. In order to offload much of the cargo it hauls, such as flour, Bulkmatic must "blow out" the product using the PTO equipment attached to its trucks. The PTO equipment is powered by fuel drawn from the same tank as the engine. The amount of

---

1. The exemptions provided by sections 6–6–4.1– 4(d) and 6–6–4.1–4.5(d) require the taxpayer to pay the tax and then file a refund claim. In this opinion, the term exemption will be used to describe this process and includes the exemptions provided in both sections.

fuel consumed during a power takeoff depends on several factors, including the material to be offloaded and the size of the shipment. However, the average amount of fuel consumed is approximately seven gallons per offload. (Tr. at 8). Additional facts will ·be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This court reviews final determinations of the Department· de novo and is bound neither by the evidence nor the issues raised at the administrative level. *See* IND. CODE ANN. § 6–8.1–9–1(d) (West Supp.1997); *ANR Pipeline Co. v. Department of State Revenue,* 672 N.E.2d 91, 93 (Ind.Tax Ct.1996). Summary judgment is appropriate only when no genuine issue of material fact exists. IND.T.R. 56(C); *Roehl Transp., Inc. v. Department of State Revenue,* 653 N.E.2d 539, 541 (Ind.Tax Ct.1995). Cross motions for summary judgment do not alter this standard. *Id.*

### Discussion

Bulkmatic contends that limiting the exemption to only those carriers who use PTO equipment in Indiana violates the Commerce Clause. Before evaluating this contention, it is necessary to explain how Indiana's motor carrier fuel taxation scheme works. Motor carriers using Indiana roads are taxed for the fuel consumed during the use of those roads. *See* IND.CODE ANN. §§ 6–6–4.1–4, –4.5 (West Supp.1997). The tax is calculated by taking the *total* amount of fuel consumed in the motor carrier's nationwide operations (i.e., both within and without Indiana) and multiplying that figure by a fraction. The numerator of the fraction is the total miles traveled on Indiana highways by the motor carrier's fleet. *See id.;* IND.ADMIN. CODE tit. 45, r. 13–4–5 (1996). This figure, putatively representing the gallons of fuel used in Indiana, is then multiplied by the applicable

rate of $0.27 to arrive at the motor carrier's tax liability.[2]

Fuel used to operate PTO equipment (both within and without Indiana) is included in the tax calculation.[3] *See* IND.ADMIN.CODE tit. 45, r. 13–4–4. In response, the Indiana General Assembly enacted an exemption for the use of fuel in the operation of PTO equipment. Subsequently, the Indiana General Assembly limited the exemption to only those motor carriers who use PTO equipment in Indiana:

> The tax imposed under this section does not apply to that portion of motor fuel used *in Indiana* to propel equipment mounted on a motor vehicle having a common reservoir for locomotion on ·the highway and the operation of the equipment, as determined by rule of the commissioner. The exemption granted by this subsection shall be taken on a quarterly basis in the form of a claim for refund prescribed by the department.

IND.CODE ANN. § 6–6–4.1–4(d) (emphasis added); *see also* IND.ADMIN.CODE tit. 45, r. 13–4–7(b)(21) (1996).

The exemption is not based on the actual amount of gallons used by the PTO equipment. Rather, the motor carrier is refunded a fixed percentage of the tax paid. The fixed percentage is based on the type of vehicle and the type of equipment on the vehicle. *See* IND.ADMIN.CODE tit. 45, r. 13–4–7 (1996).

A reading of the applicable statutes and regulations shows that the tax·is calculated quarterly on a fleet-wide, rather than a per vehicle or' per trip, basis. *See· id.* r. 13–4–5. This means that even the gallons used by vehicles in motor carrier's fleet that do not pass through Indiana during the tax period are included in the tax calculation. In and of itself, this is not troublesome. Putatively, the gallons used outside of Indiana will be excluded by the formula used to calculate the tax. However, calculating the tax on a fleet-wide, basis leads to an·interesting result. Neither the applicable statutes, nor the regu-

---

2. The motor carrier fuel tax is comprised of a $0.16 per gallon tax imposed by section 6–6–4.1–4(a). This tax is combined with a surtax of $0.11 per gallon imposed by section 6–4.1–4.5(a), thereby making ·the total motor carrier fuel tax $0.27 per gallon.

3. For example, a truck that leaves Indianapolis and travels to Chicago might consume fifteen gallons of fuel while driving between the two cities. If PTO equipment is used to unload cargo in Chicago, seven additional gallons of fuel might be consumed. Thus, the amount of fuel included in the calculation of the motor carrier's tax will be 22 gallons.

lations state the number of times a carrier must use PTO equipment in Indiana in order to qualify for the in Indiana exemption. Accordingly, it appears that a single use of PTO equipment in Indiana will qualify a carrier for the exemption.[4]

Bulkmatic offers an example[5] in support of its contention that limiting the exemption to only those carriers who use PTO equipment in Indiana is unconstitutional. A motor carrier who makes only one trip, transports cargo from Indianapolis to Chicago, and uses PTO equipment to offload cargo, will not receive the exemption. However, a carrier making the reverse trip, from Chicago to Indianapolis, will use the same stretch of highway, but will pay less tax due to the exemption received for using PTO equipment in Indiana. Bulkmatic argues that it is unconstitutional for two companies using an identical stretch of highway to be assessed a different amount of tax. In addition to this, Bulkmatic argues that the exemption creates an incentive to deliver products to Indiana companies because the motor carrier will pay less tax for the delivery due to the exemption. According to Bulkmatic, this effectively diverts deliveries into Indiana and away from out-of-state competitors and therefore, this scheme runs afoul of the Commerce Clause.

■■■ The Commerce Clause states in relevant part that "Congress shall have Power ... [t]o regulate Commerce ... among the several States...." U.S. CONST. art. I, § 8,

cl. 3. The Commerce Clause is designed to create an area of free trade among the states. *Boston Stock Exch. v. New York State Tax Comm'n*, 429 U.S. 318, 328, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977). "'[T]he Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States,'" including the State's power to tax. *Id.* at 328, 97 S.Ct. at 606 (quoting *Freeman v. Hewit*, 329 U.S. 249, 252, 67 S.Ct. 274, 276–77, 91 L.Ed. 265 (1946)). "The definition of 'commerce' is the same when relied on to strike down or restrict state legislation as when relied on to support some exertion of federal control or regulation." *Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, ——, 117 S.Ct. 1590, 1597, 137 L.Ed.2d 852 (1997) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 326, 99 S.Ct. 1727, 1731, 60 L.Ed.2d 250 (1979)). Therefore, "[n]o State, consistent with the Commerce Clause, may 'impose a tax which discriminates against interstate commerce....'" *Boston Stock Exch.* 429 U.S. at 329, 97 S.Ct. at 607 (quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959)). "The negative or dormant implication of the Commerce Clause prohibits state taxation ... or regulation ... that discriminates against or unduly burdens interstate commerce...." *General Motors Corp. v. Tracy*, 519 U.S. 278, ——, 117 S.Ct. 811, 818, 136 L.Ed.2d 761 (1997) (citations omitted).[6]

4. This conclusion is buttressed by an examination of the regulatory regime. The exemption itself is not based on the actual use of PTO equipment in Indiana. Instead, the calculation of the portion of motor fuel used to operate the PTO equipment will be "determined by rule of the commissioner." IND.CODE ANN § 6–6–4.1–4(d). The commissioner has determined that the portion used for operation of the PTO equipment is 15%, IND.ADMIN.CODE tit. 45, r. 13–4–7(b)(21), no matter how much the actual use was in a particular case. Because the tax and exemption are calculated on a fleet-wide basis, the likelihood of a large disparity between the actual gallons used in Indiana and the amount of the exemption is substantially increased.

5. The parties have framed the issue as if the tax and exemptions were calculated on a per vehicle or per trip basis, rather than a fleet-wide basis, and neither party has explored the possibility of a large carrier using PTO equipment in Indiana once in order to qualify for the exemption.

Framing the issue in this manner magnifies the coercive effect of the "in Indiana" limitation. If the tax and exemption were calculated on a per vehicle or per trip basis, a carrier would have to increase its use of PTO equipment (i.e., deliveries) in Indiana in order to maximize its tax savings.

6. The distinction between what constitutes a burden on interstate commerce and what constitutes discrimination against interstate commerce is not clear in the area of state taxation. *General Motors*, 519 U.S. at —— n. 12, 117 S.Ct. at 824 n. 12. Bulkmatic only argues that the "in Indiana" limitation on the exemption constitutes discrimination. Bulkmatic makes no reference to the "burdens interstate commerce" strand of analysis. What constitutes a burden on interstate commerce requires a detailed factual analysis that would not ordinarily be appropriate on a Motion for Summary Judgment. *See e.g., Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Pike v.*

■ A state tax will be upheld against a Commerce Clause challenge when "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977); *see also Roehl*, 653 N.E.2d at 545. Bulkmatic claims that limiting the exemption of section 6-6-4.1-4(d) does not achieve fair apportionment and that it discriminates against interstate commerce. The Court will turn first to Bulkmatic's fair apportionment argument.

Bulkmatic's reply brief in support of its motion for summary judgment "invites the Court to consider why the exemption scheme ... violates fair apportionment...." (Pet. Reply Br. at 8). The Court declines Bulkmatic's invitation to research and analyze this issue on its behalf. Bulkmatic cites no authority in support of its position. Bulkmatic argues only that "the 'in Indiana' exemption ... skews the notion of fair apportionment because the exemption is dependent upon where the presumptive fuel consumption occurs." *Id.* In short, Bulkmatic's apportionment claim is "raised in a general manner and [is] not supported by specific argument or citation of authority." *In re Kesler*, 272 Ind. 161, 397 N.E.2d 574, 576 (1979); *see also Indiana Waste Sys. v. Department of State Revenue*, 633 N.E.2d 359, 367 (Ind.Tax Ct.1994) (a court will not make a party's case on a motion for summary judgment). Therefore, Bulkmatic's fair ap-

portionment claim "do[es] not present an issue for determination by this Court." *In re Kesler*, 397 N.E.2d at 576.

■ Bulkmatic's second argument is that the "in Indiana" limitation violates the third part of the *Complete Auto* test because it discriminates against interstate commerce.[7] In short, Bulkmatic argues that one motor carrier might be assessed a different tax rate than another.[8]

The Department argues that this scheme does not discriminate against interstate commerce. The Department's position seems to be that discrimination exists under the Commerce Clause only when a state treats out-of-state companies more harshly than in-state companies. The Department's position is that limiting the exemption to motor carriers using PTO equipment in Indiana does not constitute discrimination because motor carriers incorporated in Indiana are treated no differently. Indiana motor carriers must also use PTO equipment here to receive the exemption.

The Department made two additional arguments. The Department argues that the exemption given is "very generous" and therefore is not discriminatory. Finally, the Department agrees that some carriers might pay more tax than others but argues that "exactness" is not required under the Commerce Clause. This Court agrees with Bulkmatic that section 6-6-4.1-4(d) discriminates against interstate commerce and holds it unconstitutional.

---

*Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). In any event, whether the exemption impermissibly burdens interstate commerce is not considered because Bulkmatic did not raise the issue.

**7.** As noted above, the parties have elected to treat this case as if the tax and exemptions were computed on a per vehicle or per trip basis rather than on a fleet-wide basis. This treatment magnifies the incentive to make more deliveries to Indiana than the carrier otherwise would. However, this treatment has no effect on the Court's analysis. When a tax has a discriminatory effect, a court "need not know how unequal the Tax is before concluding that it unconstitutionally discriminates." *Maryland v. Louisiana*,

451 U.S. 725, 760, 101 S.Ct. 2114, 2136, 68 L.Ed.2d 576 (1981).

**8.** There are four possible situations the Court has considered in reviewing this tax. The first is a motor carrier who travels to Indiana and uses PTO equipment in this state. The second is a motor carrier who engages entirely in intrastate commerce and uses PTO equipment. The third is a motor carrier who travels on Indiana roads but does not use PTO equipment here. The fourth is a motor carrier who uses Indiana roads but does not have PTO equipment attached to the truck. The actual tax rate applied to these four motor carriers in Indiana is the same. However, once the 15% exemption is granted for using PTO equipment in Indiana, the effective rate of tax is reduced for the motor carriers in the first two situations.

Exactly what constitutes discrimination against interstate commerce has not been precisely defined by the Supreme Court. *See* Walter Hellerstein, *Commerce Clause Restraints on State Tax Incentives,* 82 MINN. L.REV. 413, 415 (1997). The Supreme Court has held that discrimination "means the differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys., Inc. v. Department of Envtl. Quality,* 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994). One commentator has written that a tax is discriminatory when it "imposes greater burdens on out-of-state goods, activities, or enterprises than on competing in-state goods, activities, or enterprises...." Hellerstein, *supra,* at 415.

■ Despite the uncertainty in Commerce Clause jurisprudence, it is clear that discrimination against interstate commerce is not limited to taxing companies incorporated in other states more heavily than those incorporated in the taxing state. Discrimination against interstate commerce also encompasses unequal taxation of out-of-state transactions or incidents. The Supreme Court has specifically stated that it is unconstitutional to "'tax[ ] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state.'" *Fulton Corp. v. Faulkner,* 516 U.S. 325, 331, 116 S.Ct. 848, 854, 133 L.Ed.2d 796 (1996) (quoting *Chemical Waste Management, Inc. v. Hunt,* 504 U.S. 334, 342, 112 S.Ct. 2009, 2013–14, 119 L.Ed.2d 121 (1992)).

In this case, Indiana exacts a different price for the use of its roads based on the location of the use of PTO equipment. When a motor carrier does not operate PTO equipment in Indiana, he does not receive the exemption. Therefore, the same incident, i.e, the use of Indiana roads, is taxed more heavily because a motor carrier has chosen not to use its PTO equipment in Indiana. This is contrary to *Fulton Corp.,* and as such, it cannot stand. This conclusion is confirmed by a review of analogous case law.

In *Camps Newfound/Owatonna v. Town of Harrison,* the Supreme Court was asked to decide whether a Maine statute granting an exemption from property tax violated the Commerce Clause. The petitioner was a religious camp for children that advertised its services and recruited campers outside of Maine. Most of the campers were from states other than Maine. The Maine property tax system provided tax exemptions for charitable institutions incorporated in Maine. However, camps operated primarily for the benefit of nonresidents of Maine could only qualify for a reduced exemption if the weekly charge for camping did not exceed thirty dollars. This excluded virtually every camp catering to out-of-state residents from the exemption. The Supreme Court held that this arrangement violated the Commerce Clause.

The Court began by stating that summer camps are articles of interstate commerce. The Court compared camps to hotels, which have long been considered a part of interstate commerce. The Court reasoned that although the "business activities are purely local, if 'it is interstate commerce that feels the pinch, it does not matter how local the operation that applies the squeeze.'" *Camps Newfound,* 520 U.S. at ——, 117 S.Ct. at 1597 (quoting *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 258, 85 S.Ct. 348, 358, 13 L.Ed.2d 258 (1964)). The Court then turned to the Camp's discrimination argument.

The Court focused on the fact that the Maine exemption scheme "encourages affected entities to limit their out-of-state clientele, and penalizes the principally nonresident customers of businesses catering to a primarily interstate market." *Id.* at ——, 117 S.Ct. at 1598. The Court also stated that Commerce Clause discrimination is not limited to protection of local merchants. "Economic protectionism is not limited to attempts to convey advantages on local merchants; it may include attempts to give local consumers an advantage over consumers in other states." *Id.* at ——, 117 S.Ct. at 1599 (quoting *Brown–Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 580, 106 S.Ct. 2080, 2084–85, 90 L.Ed.2d 552 (1986)). The Court further noted that the Maine exemption provided a strong incentive to avoid doing business with nonresidents of Maine if this would save the camps tax. *Id.*

Similar considerations are present in this case. There are strong incentives for motor

carriers to make deliveries using PTO equipment here. Using PTO equipment in Indiana will reduce the transaction cost of making an Indiana delivery due to the 15% tax refund that will be received. The "in Indiana" limitation also penalizes nonresident customers of interstate businesses. Purchasers of Bulkmatic's cargo located outside Indiana might have delivery delayed in favor of a similar delivery to Indiana. The carrier will simply pay less tax for delivering to the Indiana consumer. As in the Maine case, this may encourage motor carriers to limit their out-of-state clientele.[9]

The Indiana tax scheme contains the same unconstitutional characteristics as the Maine scheme found in *Camps Newfound/Owatonna.* Indiana is effectively taxing certain out-of-state transactions more heavily than those in state and coerces motor carriers to do business in Indiana. Indiana's exemption scheme says to motor carriers "in effect: 'You are already subject to our taxing power because you have engaged in taxable activity in this state. If you would like to reduce those burdens, you may do so by directing additional business activity to this state. Should you decline our invitation, we will continue to exert our taxing power over you as before....'" Hellerstein, *supra*, at 426–27. This sort of message "reflects the use of the taxing power to coerce in-state business activity." *Id.* at 427. This fits squarely within the definition of discrimination.

Other cases support the conclusion that the "in Indiana" limitation is a violation of the Commerce Clause. One such case is *Boston Stock Exch. v. New York State Tax Comm'n*, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977). In *Boston Stock Exchange*, New York imposed a tax on securities transactions taking place within the State. Due to the nature of the securities business, transactions related to a sale might occur in New York while the actual sale might be made outside the State. Regardless of where the final sale was made, a party

was subject to the tax if a transaction related to the sale occurred in New York. New York assessed its tax based on the selling price per share and the number of shares sold. *Id.* at 322–23, 97 S.Ct. at 603–04. However, New York taxed transactions involving out-of-state sales more heavily than those involving in-state sales. *Id.* at 319, 97 S.Ct. at 601–02. The tax was challenged by several securities exchanges located in other states. These exchanges argued that the tax was a violation of the Commerce Clause. The Supreme Court agreed that the discount given for selling securities in New York was discriminatory. The Court held that the taxation scheme fell "short of the substantially evenhanded treatment" the Commerce Clause demands. *Id.* at 332, 97 S.Ct. at 608.

The exemption given to motor carriers who use PTO equipment in Indiana has the same flaws as the tax scheme in New York. Motor carriers having contact with Indiana (i.e., through the use of the roads) are required to pay a tax on the gallons of fuel used. This is without regard to where the motor carrier is incorporated or where the goods are offloaded. However, those carriers using PTO equipment to deliver to Indiana will pay less tax than those delivering to other states. This is highly analogous to the New York scheme where only those persons selling securities in the state pay a lower tax. Like the New York exemption scheme, the "in Indiana" exemption does not result in "substantially evenhanded treatment" of motor carriers.

In addition to *Camps Newfound* and *Boston Stock Exchange*, *Westinghouse Elec. Corp. v. Tully*, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984), supports this Court's conclusion. In *Westinghouse*, a suit arose after Congress began giving tax incentives to Domestic International Sales Corporations (DISC) in order to increase U.S. exports. The New York state taxation scheme taxed DISC income. However, New York also

---

**9.** The evidence before this Court indicates the likelihood of a conscious decision by motor carriers to deliver to Indiana companies rather than companies outside of Indiana because of the 15% exemption given for using PTO equipment. (Sullivan Deposition, Pet'r Ex. B at 54). In addition to this evidence, economic theory predicts that a

taxpayer will make a choice to pay the lower tax by delivering to Indiana. "Taxing an activity creates an incentive for people engaged in it to substitute another activity that is taxed less heavily." RICHARD A. POSNER, ECONOMIC ANALYSIS OF LAW 453 (3d ed. 1986).

sought to encourage the location of DISCs in the state by passing legislation giving a tax credit to the DISCs for export business actually done in New York. The Supreme Court struck this tax credit down as unconstitutional. The Court held that New York had "foreclose[d] tax neutral decisions" *Westinghouse,* 466 U.S. at 406, 104 S.Ct. at 1867 (quoting *Boston Stock Exch.,* 429 U.S. at 331, 97 S.Ct. at 607–08). The Court also held that New York had placed a "discriminatory burden on commerce to sister States." *Id.*(quoting *Boston Stock Exch.,* 429 U.S. at 331, 97 S.Ct. at 607–08).

The limitation of the 15% exemption to only those carriers using PTO equipment in Indiana also forecloses tax neutral decisions. If a motor carrier does not operate PTO equipment in Indiana, that carrier will be charged a higher rate for using the roads. Additionally, the availability of the lower rate will encourage motor carriers to accept more deliveries to Indiana than it otherwise would. This is impermissible discrimination against out-of-state interests.

Although the Department recognizes this differential tax treatment, it argues that the scheme does not discriminate against interstate commerce. (Resp. Br. at 4) (Tr. at 36). The Department supports its position by citing *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981).

In *Commonwealth Edison,* the Court examined Montana's severance tax on coal mined in that State. Several companies challenged the tax on Commerce Clause grounds because the bulk of Montana coal was shipped to other states. *Id.* at 617–18, 101 S.Ct. at 2953–54. These shipments were made under contracts that effectively shifted the tax burden to taxpayers in those states. *Id.* Out-of-state purchasers of the coal argued that this taxation scheme resulted in Montana taxing out-of-state consumers more heavily than in-state consumers. However,

all consumers were charged the same tax rate. Out-of-state consumers simply purchased more Montana coal than in-state consumers. The Court held that the tax did not discriminate against interstate commerce because "the tax burden is borne according to the amount of coal consumed and not according to any distinction between in-state and out-of-state consumers." *Id.* at 619, 101 S.Ct. at 2954.

Like the tax at issue in *Commonwealth Edison,* this exemption makes no distinction between Indiana citizens and citizens of other states. Eligibility for the exemption does not depend on Indiana citizenship. However, the type of discrimination that was absent in *Commonwealth Edison* is present here. As we have seen, eligibility for the PTO exemption turns on whether a taxpayer delivers its cargo in Indiana as opposed to delivering it elsewhere. *See Fulton Corp.,* 516 U.S. at 331, 116 S.Ct. at 854 (tax is discriminatory if it "taxes a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state."). Indiana's exemption is distinguishable from the Montana tax because state borders are not "essentially irrelevant." [10] *Commonwealth Edison,* 453 U.S. at 618, 101 S.Ct. at 2954 (1981). Central to the holding in *Commonwealth Edison* is the fact that "the Montana tax is computed at the same rate regardless of the final destination of the coal, and there is no suggestion here that the tax is administered in a manner that departs from this evenhanded formula." *Id.* at 618, 101 S.Ct. at 2954. In other words, the tax at issue did not depend on the ultimate destination of the coal. In this case, the price Indiana exacts for the use of its highways depends on where the cargo is delivered. Therefore, the existence of state borders is not "essentially irrelevant." This distinction explains the different outcomes.

---

**10.** The Department cites *Commonwealth Edison* for the proposition that where a tax is based on the "magnitude of the event," the tax is not discriminatory. (Pet'r Br. at 3). The Department argues that the motor carrier fuel tax is such a tax, and consequently passes Commerce Clause muster. However, in this case the rate of tax may vary although the "magnitude of the event" remains constant, i.e., a motor carrier may be taxed differently for the use of the same roads based on its destination. The "magnitude of the event" is not the sole factor in calculating the applicable tax. Rather, the tax is partially based on impermissible considerations, namely, the crossing of state lines.

The Department also relies heavily on the argument that it has endeavored to give taxpayers an exemption that is "very generous." (Resp. Br. at 2). The Department argues that the exemption is an effort to afford taxpayers an exemption from paying a tax on gallons of fuel not used on Indiana roads, while retaining the ease of the calculation for the Department. (Resp. Br. at 4–6). The Court understands these arguments to mean that even if there is minor discrimination against interstate commerce, "the burden it places on interstate commerce is not of constitutional significance." *Westinghouse Electric Corp.*, 466 U.S. at 405, 104 S.Ct. at 1867.

The Supreme Court has stated that when a tax is designed to have a discriminatory effect, a Court "need not know how unequal the Tax is before concluding that it unconstitutionally discriminates." *Maryland v. Louisiana*, 451 U.S. at 760, 101 S.Ct. at 2136. However, this Court does not need to decide whether the "in Indiana" exemption was *designed* to discriminate. It is clear that providing one motor carrier a 15% exemption and another carrier no exemption for the use of the same road is not the type of evenhanded treatment ensured by our Commerce Clause. *See Boston Stock Exch.*, 429 U.S. at 332, 97 S.Ct. at 608. Although the goals of the exemption may be admirable, admirable goals do not insulate this provision from Commerce Clause scrutiny.

Finally, the Department argues that this is not a case of discrimination but rather a lack of exactness case. Essentially, the Department claims that although two taxpayers may pay different amounts of tax for using identical amounts of fuel, the Constitution does not require the Department to devise a formula that precisely measures and taxes the fuel consumed. The Department points out that this Court has held that Indiana is not required to calculate fuel consumption on a "drop for drop, fume for fume," basis. *Roehl*, 653 N.E.2d at 546 (internal quotation marks omitted). The Department cites *Roehl* stating "as long as [the amount of tax] is based on some fair approximation of use or privilege for use ... *and is neither discriminatory against interstate commerce* nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster ..." *Id.* (quoting *Evansville–Vander-*

*burgh Airport Auth. Dist. v. Delta Airlines, Inc.*, 405 U.S. 707, 716–17, 92 S.Ct. 1349, 1355–56, 31 L.Ed.2d 620 (emphasis added)).

The Department is correct that the formula used is not required to measure exactly the amount of fuel consumed. *See Roehl*, 653 N.E.2d at 546. However, the Department's argument ignores the Supreme Court's clear prohibition of a tax from discriminating against interstate commerce.

The "in Indiana" limitation on Indiana's motor carrier fuel tax exemption discriminates against interstate commerce and forecloses tax neutral decisions. This simply is not allowed under the Commerce Clause.

## CONCLUSION

The limitation of the PTO use exemption to those motor carriers who use PTO equipment in Indiana is a violation of the Commerce Clause. Bulkmatic is entitled to a refund of the tax paid that was collected in violation of the Commerce Clause.