**JACK GRAY TRANSPORT, INC. et al., Petitioner,**

v.

**DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0002–TA–14.

Tax Court of Indiana.

Feb. 20, 2001.

Robert W. Loser, II, Patrick M. O'Brien, Michael R. Franceschini, William S. Ayers, Ruth E. Myer, Ayres Carr & Sullivan, P.C., Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The petitioners, Jack Gray Transport, Inc., as well as thirty-eight other similarly situated parties[1] (collectively Jack Gray) appeal the final determination of the Department of State Revenue (Department),

---

1. On April 20, 2000 Jack Gray filed a petition to join thirty-eight other parties, which the Court granted on May 5, 2000.

whereby the Department declined to apply Indiana's proportional use exemption (Exemption) to the motor fuel and surcharge taxes found at IND.CODE ANN. §§ 6–6–4.1–4(d) and 6–6–4.1–4.5(d) (West 2000) for the second, third and fourth quarters of 1998, as well as for the first two quarters of 1999. In its original tax appeal, Jack Gray raises two issues:

I. Whether the Court should certify a class consisting of Jack Gray and an estimated 1536 other petitioners;[2] and

II. Whether the Department acted contrary to law when it failed to apply the exemptions to the quarters at issue.

■ The Department has filed a Motion to Dismiss under Trial Rule 12(B)(6) (Motion) for failure to state a claim upon which relief can be granted.[3] For the reasons explained below, the Court will not certify Jack Gray's proposed class. However, the Court finds that the Department acted contrary to law when it failed to grant the exemption for the quarters at issue. Therefore, the Court denies the Department's Motion and instead grants summary judgment in favor of Jack Gray.

## FACTS AND PROCEDURAL HISTORY

The material facts are not in dispute. Jack Gray is a motor carrier engaged in the business of commercial trucking both within and outside of Indiana. In 1991, the legislature limited the exemptions provided for in sections 6–6–4.1–4(d) and 6–6–4.1–4.5(d) to only those motor carriers who used power take-off (PTO) equipment in Indiana by adding the words "in Indiana" to each statute. This Court subsequently held in 1998, and again in 1999, that the "in Indiana" limitation violated the Commerce Clause of the U.S. Constitution, art. 1, § 8. *Bulkmatic Transport Co. v. Department of State Revenue*, 691 N.E.2d 1371, 1379 (Ind. Tax Ct.1998) (*Bulkmatic II* ); *Bulkmatic Transp. Co. v. Department of State Revenue*, 715 N.E.2d 26, 36 (Ind. Tax Ct.1999) (*Bulkmatic III*). Following these decisions, the legislature amended the statutes at issue by removing the "in Indiana" requirement in order to obtain a refund for taxes paid on fuel used for non-highway use and by changing the exemptions to a credit. IND.CODE ANN. §§ 6–6–4.1–4(d) and –4.5(d) (West 2000). The case at bar involves the time period between this Court's *Bulkmatic II* decision on February 13, 1998 and the legislature's most recent amendment of the law, which became effective on July 1, 1999. P.L. 222–1999.

■ The Department denied Jack Gray's application for the exemptions on February 23, 2000.[4] The Department filed

2. This number is taken from Jack Gray's amended petition.

3. Trial Rule 12(B) states that:

> If, on a motion, asserting the defense number (6) ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

In this case, several exhibits, including a joint stipulation by the parties, were submitted and accepted as evidence. (Pet'r.Exs. 1–5.) Therefore, the Court will treat the Department's Motion as one for summary judgment. *Bronson v. Bronson*, 448 N.E.2d 1231, 1232 (Ind.Ct.App.1983).

4. Jack Gray filed its original tax appeal on February 10, 2000. The Department, however, did not issue its final determination until February 23, 2000. As of February 10, the Court did not possess subject matter jurisdiction, since the Court is only authorized to hear appeals that are filed within 90 days from a final determination made by the Department, or in the absence of a final determination, any appeal that the Department has not acted upon within 180 days. *See* IND.CODE ANN. §§ 33–3–5–2(a)(1) (West 1996 and Supp. 2000), 6–8.1–9–1(c)(2) and (3) (West 2000).

Jack Gray, however, in its amended petition filed on April 20, 2000, stated, albeit fleetingly, that the Court possessed subject matter jurisdiction, since its amended petition was filed after the Department's final determination. (Pet'r. Amended Tax Appeal ¶ 5.) The Court agrees. Because the amended petition was filed within 90 days of the Department's final determination, the Court has jurisdiction to consider this original tax appeal. *See* IND.CODE ANN § 6–8.1–9–1(c)(2) (West 2000).

its Motion on June 5, 2000. Thereafter, on June 30, 2000, the Court held a hearing on the Department's Motion. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The Court reviews findings of the Department de novo and is bound by neither the evidence nor the issues raised at the administrative level. IND.CODE ANN. § 6–8.1–9–1(d) (West 2000). *Snyder v. Department of Revenue,* 723 N.E.2d 487, 488 (Ind. Tax Ct.2000). Summary judgment is only appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C), *Roehl Transport, Inc. v. Department of Revenue,* 653 N.E.2d 539, 541 (Ind. Tax Ct.1995). Summary judgment is particularly appropriate when the question is one of the application of the law to undisputed facts. *Id.* When any party has moved for summary judgment, the Court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment has been filed by such party. T.R. 56(B).

### Discussion

Jack Gray first asks the Court to certify a class in which Jack Gray would represent itself, as well as 1536 other similarly situated motor carrier companies. The Department contends that Jack Gray has

not met the requirements of T.R. 23(A)(1)[5] and therefore should not have its class certified. In the alternative, the Department argues that Jack Gray has not satisfied the requirements of T.R. 23(B)(1). Second, Jack Gray argues that it is entitled to the exemptions for the second, third and fourth quarters of 1998, as well as the first two quarters of 1999. In its Motion, the Department contends that this Court's *Bulkmatic Transportation* decisions authorized it to deny the exemptions at issue. The Court will address each issue in turn.

### I. Class Certification

To become certified as a class, the proposed class must meet all four requirements of T.R. 23(A), which are:

1. The class is so numerous that joinder of all members is impracticable;

2. There are questions of law or fact common to the class;

3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. The representative parties will fairly and adequately protect the interests of the class.

Once this is established, a class must also meet one of the three subsections of T.R. 23(B).[6] In this case, Jack Gray argues that its class meets the numerosity requirement of T.R. 23(A)(1) as well as satisfies the requirements of T.R. 23(B)(3).

---

**5.** The Department has stipulated that Jack Gray meets the requirements of T.R. 23(A)(2)-(4). (Hr'g Tr. at 67.) Therefore, the Court will limit its discussion to whether Jack Gray has met the numerosity requirement of T.R. 23(A)(1) as well as the requirements of T.R. 23(B).

**6.** T.R. 23(B) consists of three subsections, of which a class must meet one. Subsection one states that a class should be certified if inconsistent adjudications could result with respect to individual members of the class which would establish incomparable standards of conduct for the party opposing the class. Subsection two states that the party opposing the class has acted or refused to act on the class claims, thereby making final injunctive

or declaratory relief with respect to the class appropriate. T.R. 23(B)(3) states that a class action may be maintained when:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
> (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> \* \* \* \*
> (d) the difficulties likely to be encountered in the management of a class action.

■ The Court notes that the numerosity prerequisite under T.R. 23(A)(1) is not simply a test of numbers. *Connerwood Healthcare, Inc. v. Estate of Herron,* 683 N.E.2d 1322, 1326 (Ind.Ct.App.1997), *distinguished on other grounds by Martin v. Amoco Oil Co.,* 696 N.E.2d 383, 385 n. 3 (Ind.1998). Instead, the Court's inquiry focuses on whether the number of litigants would make joinder impracticable. *Id.* This inquiry requires the Court to consider both judicial economy and the ability of the class members to institute individual suits. *Id.* at 1326–27.

■ At the hearing, Jack Gray stated that it had the ability to join all potential claimants in one petition, rather than in a class action. (Hr'g Tr. at 65) ("We can certainly join in litigation every possible taxpayer if [each] choose[s] to come in.") Thus, judicial economy is best served by having all claimants joined in one action. *Connerwood Healthcare, Inc.,* 683 N.E.2d at 1326–27. In addition, the Department did not challenge the ability of any of the potential 1536 claimants to institute his own individual suit, based on the Department's comments at the hearing. (Hr'g Tr. at 67) ("If that's what it requires under the applicable law, yes, [The Department is] willing to [try 1536 cases].") Considering Jack Gray's expressed ability to join all potential claimants in one action and the Department's willingness to try 1536 cases, the Court concludes that joinder of all potential members is not impracticable under the Indiana joinder rules.[7] *Cf. Connerwood,* 683 N.E.2d at 1329. (finding that class certification was appropriate since elderly nursing home residents could not individually protect their own interests.) The Court holds that Jack Gray has not met the numerosity requirement of T.R. 23(A)(1)[8] and DENIES Jack Gray's class certification request.

**7.** The Court notes that the Indiana joinder rules encourage entertaining the broadest possible scope of action consistent with fairness to the parties. *Harlan Sprague Dawley, Inc. v. Department of Revenue,* 583 N.E.2d 214, 219 (Ind. Tax Ct.1991).

## II. *Scope of the Bulkmatic Transportation cases*

Jack Gray next contends that the Department acted contrary to law when it refused to grant it the exemptions for the second through fourth quarters of 1998, as well as for the first two quarters of 1999. It contends that this Court's 1998 and 1999 *Bulkmatic Transportation* cases only found the "in Indiana" limitations of sections 6–6–4.1–4(d) and –4.5(d) unconstitutional and not the entire statutes. Therefore, Jack Gray argues, it is entitled to a refund for those quarters. The Department argues that the *Bulkmatic Transportation* decisions held those statutes completely unconstitutional.

In *Bulkmatic II,*[9] this Court ruled that the "in Indiana" language violated the Commerce Clause of the U.S. Constitution, *Bulkmatic Transp.,* 691 N.E.2d at 1379, and that it is unconstitutional to tax "a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state." *Id.* at 1376 (quoting *Fulton Corp. v. Faulkner,* 516 U.S. 325, 331, 116 S.Ct. 848, 854, 133 L.Ed.2d 796 (1996)) (internal quotations omitted). This Court further stated that:

The limitation of the [ ] exemption to only those carriers using PTO equipment in Indiana also forecloses tax neutral decisions. If a motor carrier does not operate PTO equipment in Indiana, that carrier will be charged a higher rate for using the roads. Additionally, the availability of the lower rate will encourage motor carriers to accept more deliveries to Indiana than it otherwise would. This is impermissible discrimination against out-of-state interests.

*Id.* at 1378. The Court concluded its analysis by saying that the "in Indiana" limitation on Indiana's motor carrier fuel tax

**8.** Since Jack Gray does meet the requirements of T.R. 23(A)(1), the Court need not address Jack Gray's claims under T.R. 23(B).

**9.** The first *Bulkmatic Transportation* case can be found at 629 N.E.2d 955 (Ind. Tax Ct.1994).

exemption discriminates against interstate commerce and forecloses tax neutral decisions, a result which is not allowed under the Commerce Clause. *Id.* at 1379.

Similarly, in *Bulkmatic III,* this Court stated that, "The practical effect of the in Indiana limitation is to exact a different price for the use of Indiana roads based on where the motor carrier decides to operate its PTO equipment." *Bulkmatic Transp.,* 715 N.E.2d at 28. The Court further stated, "[T]he basic principle is clear: a state taxation scheme must operate evenhandedly with respect to interstate commerce. The in Indiana limitation on the proportional use exemption violates this basic principle and therefore violates the Commerce Clause." *Id.* at 29. The Court concluded its analysis by saying, "when a state tax exemption has been declared unconstitutional under the Commerce Clause, the state may either apply the exemption in a non-discriminatory manner or remove the exemption altogether. In this case, the Indiana General Assembly has already made that choice by substantially amending the proportional use exemption." *Id.* at 34–35.

■ In this instance, the Department contends that the Court should either resurrect the amended 1991 statute (which resulted in discrimination) or declare there to be no statute at all. (Resp't Amended Br. at 6.) The Court does neither. INDIANA CODE ANN. § 1–1–1–8(b) (West 2000) states that every Code provision is severable unless an exception exists.[10] The intent of the legislature embodied in a statute constitutes the law. *Johnson Co. Farm Bureau Coop. Ass'n v. Department of State Revenue,* 568 N.E.2d 578, 580 (Ind. Tax Ct.1991), *aff'd,* 585 N.E.2d 1336 (Ind.1992). A statute invalid in part is not necessarily void in its entirety. *State v. Monfort,* 723 N.E.2d 407, 415 (Ind.2000), *reh'g denied*

(citations omitted). *See also Kinslow v. Cook,* 165 Ind.App. 623, 627, 333 N.E.2d 819, 822 (Ind.Ct.App. 1975). The test of severability is performed by analyzing whether the Legislature would have passed the statute had it been presented without the invalid features. Ind.Code Ann. 1–1–1–8(b)(1) and (2); *see also Monfort,* 723 N.E.2d at 415.

■ As noted above, the statutes, in their pre–1991 form, did not contain the "in Indiana" language that this Court found unconstitutional in *Bulkmatic II* and *Bulkmatic III. Supra* at 3. Before the 1991 changes, section 6–6–4.1–4(d) (West 1989) read in relevant part, "The tax imposed under this section does not apply to that portion of motor fuel used to propel equipment mounted on a motor vehicle having a common reservoir for locomotion on the highway...." Section 6–6–4.1–4.5(d) (West 1989) read in part, "The tax imposed under this section does not apply to that portion of motor fuel used to propel the continuous movement apparatus of a ready-mix concrete truck...." In 1991, P.L. 69–1991, Sec. 12 added the phrase "in Indiana" after the word "used" in section 6–6–4.1–4(d), while section 13 added this same language to IND.CODE ANN. § 6–6–4.1–4.5(d), but removed the "ready-mix concrete truck" language. In 1999, following the *Bulkmatic Transport* decisions, P.L. 222–1999, Sec. 3 removed the phrase "in Indiana" from section 6–6–4.1–4(d) and changed the exemption to a credit. Section 4 did the same for IND.CODE ANN. § 6–6–4.1–4.5(d). Therefore, given the history of these statutes, the Court finds that the legislature would have passed them without the invalid language quoted above. *See Monfort,* 723 N.E.2d at 415.

■ Similarly, the intent of the legislature was never to abolish the exemption completely. *See Johnson Co. Farm Bu-*

**10.** Section 1–1–1–8(b) (West 2000) provides for the following exceptions to this severability rule:

(1) the remainder [of a statute] is so essentially and inseparably connected with, and so dependent upon, the invalid provision or application that it cannot be presumed that

the remainder would have been enacted without the invalid provision or application; or

(2) the remainder is incomplete and incapable of being executed in accordance with the legislative intent without the invalid provision or application.

*reau Coop. Ass'n,* 568 N.E.2d at 580. Despite the Department's contention, at no time did any of these changes affect the core substance of the statutes. Nowhere in the language of either the pre–1991 form of the statutes, the 1991 amendments or the 1999 amendments is the general purpose of the statutes negated. In every form of the statutes an exemption has been available to qualified carriers. The Court notes that the Indiana General Assembly is presumed to have meant what it said. *Hyatt Corp. v. Department of State Revenue,* 695 N.E.2d 1051, 1053 (Ind. Tax Ct.1998). Indeed, the legislature has consistently permitted an exemption or credit to qualified carriers throughout the history of the statutes.

Since no recognized exception exists to make the statutes at issue non-severable, the Court holds that *Bulkmatic II* and *Bulkmatic III* did not find all of the 1991 amended versions of sections 6–6–4.1–4(d) and 6–6–4.1–4.5(d) unconstitutional but merely the "in Indiana" limitations present in both statutes to be so. The effect of

these cases, then, was to sever the infirm part of the statutes, while leaving the rest of the law intact. Therefore, the Department acted contrary to law when it failed to grant the exemptions and issue refunds to the petitioners for the quarters at issue.[11]

## CONCLUSION

For the reasons explained above, the Court denies Jack Gray's Motion for class certification under T.R. 23. The Court finds that since there is no genuine issue of material fact in this case, Jack Gray is entitled to judgment as a matter of law. The Department's Motion is DENIED and summary judgment is instead granted to Jack Gray. This case is REVERSED and REMANDED to the Department with instructions to grant the exemptions and issue refunds to the petitioners for the quarters at issue.

---

**11.** The Court was not provided any information concerning which of the potential 1536 claimants in this case would be entitled to relief. Therefore, the Court emphasizes that its decision is limited to only Jack Gray Transport Inc., as well as the thirty-eight other parties joined in its petition that each claim refunds for all the quarters at issue.