**WASTE MANAGEMENT OF INDIANA, LLC formerly d/b/a Waste Management of Indiana, Inc., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

Nos. 49T10–0006–TA–77, 49T10–0010–TA–109.[1]

Tax Court of Indiana.

Feb. 21, 2002.

Francina A. Dlouhy, Baker & Daniels, Indianapolis, IN, Fred O. Marcus, Marilyn

---

1.  Waste Management filed the same refund claims with the Department under its original name, Waste Management of Indiana, Inc., and under its current name, Waste Management of Indiana, LLC. The Department denied both claims and Waste Management filed an original tax appeal from both refund denials. The Court has consolidated these two appeals.

A. Wethekam, Horwood Marcus & Berk, Chicago, IL, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Waste Management of Indiana, LLC (Waste Management), formerly doing business as Waste Management of Indiana, Inc., appeals the Indiana Department of State Revenue's (Department) denial of Waste Management's request for a refund of $369,598.68 plus interest of the Indiana motor carrier fuel tax and motor carrier surcharge tax (collectively the MCFT) for five quarters from April 1, 1998 to June 30, 1999. The parties raise the issue of whether the Department acted contrary to law when it denied Waste Management's claims for a refund of the MCFT.

For the reasons stated below, the Court GRANTS Waste Management's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The parties do not dispute any material facts. Waste Management provides non-hazardous waste handling and disposal services in Indiana. The company is a commercial motor carrier [2] using vehicles with a common fuel reservoir for highway locomotion and non-highway uses. Specifically, Waste Management's vehicles have specialized refuse collection equipment, winching and dumping mechanisms, and vacuum equipment that consume fuel from the vehicles' common reservoirs.

During the five quarters in dispute, Waste Management paid the MCFT at a rate of $0.27 per gallon.[3] From July 27, 1999 to October 18, 1999, Waste Management filed with the Department five refund claims totaling $369,598.68. The claims sought to recover the proportional use exemptions in Indiana Code Sections 6–6–4.1–4(d) and 6–6–4.1–5(d) (collectively the Exemption) for MCFT that Waste Management paid on fuel consumed in Indiana for the operation of its equipment mounted on its vehicles. On March 30, 2000, the Department issued a final determination denying Waste Management's claims, stating that "the Department has no statutory authority to pay refunds for all non-highway usage for any period BETWEEN THE DATE OF THE TAX COURT DECISION [in *Bulkmatic Transport Co. v. Indiana Dep't of State Revenue*, 691 N.E.2d 1371 (Ind. Tax Ct.1998) ] [4] AND JULY 1, 1999, when the statute was amended." (Pet'r Original Tax Appeal Attach. A (original emphasis) (footnote added).)

On June 27, 2000, Waste Management commenced an original tax appeal with this Court. The Department filed a motion to dismiss, which the Court denied on September 17, 2001. On October 15, 2001, Waste Management filed a Motion For Summary Judgment. The Court held a hearing on December 20, 2001. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court hears appeals from denials of refunds by the Department de

---

2. A "carrier" is defined as "a person who operates or causes to be operated a commercial motor vehicle on any highway in Indiana." IND.CODE § 6–6–4.1–1(a).

3. The motor carrier fuel tax and the motor carrier surcharge tax (collectively, the MCFT) are comprised of a $0.16 per gallon tax and an $0.11 per gallon surcharge. IND CODE §§ 6–6–2.5–28(a); 6–6–4.1–4(a); 6–6–4.1–4.5(a).

4. This Court issued its opinion in *Bulkmatic* on February 13, 1998.

novo and is not bound by the evidence or the issues raised at the administrative level. IND.CODE § 6–8.1–9–1(d); *Jack Gray Transport, Inc. v. Dep't of State Revenue,* 744 N.E.2d 1071, 1074 (Ind. Tax Ct.2001), *reh'g granted in part,* 757 N.E.2d 242 (Ind. Tax Ct.2001). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which the Court relies for purposes of the motion show there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Roehl Transport, Inc. v. Dep't of State Revenue,* 653 N.E.2d 539, 541 (Ind. Tax Ct.1995).

## Discussion

■ The issue is whether the Department acted contrary to law when it denied Waste Management's claims for a refund of the MCFT pursuant to the Exemption. The MCFT is a tax on fuel consumed by motor carriers on Indiana highways. *Bulkmatic Transport Co. v. Dep't of State Revenue,* 715 N.E.2d 26, 27 (Ind. Tax Ct.1999) (*Bulkmatic III*); *Bulkmatic Transport Co. v. Dep't of State Revenue,* 691 N.E.2d 1371, 1373 (Ind. Tax Ct.1998) (*Bulkmatic II*); *see also Anderson v. Dep't of State Revenue,* 758 N.E.2d 597, 601 n. 3 (Ind. Tax Ct.2001). Prior to its amendment in 1999, Indiana Code Section 6–6–4.1–4(d) provided that "[t]he [MCFT] does not apply to that portion of motor fuel used *in Indiana* to propel equipment mounted on a motor vehicle having a common reservoir for locomotion on the high-

way and the operation of the equipment, as determined by rule of the commissioner." IND.CODE § 6–6–4.1–4(d) (1998) (amended by Pub.L. No. 222–1999, § 3, 1999 Ind. Acts 1492–93) (emphasis added). Indiana Code Section 6–6–4.1–4.5(d) contained identical language with regard to the surcharge tax. IND.CODE § 6–6–4.1–4.5(d) (1998) (amended by Pub.L. No 222–1999, § 4, 1999 Ind. Acts 1493–94).

In *Bulkmatic II* and *III*, this Court held that the "in Indiana" clause of sections 4(d) and 4.5(d) violated the Commerce Clause.[5] *Bulkmatic III,* 715 N.E.2d at 32; *Bulkmatic II,* 691 N.E.2d at 1376. In 1999, the Legislature amended sections 4(d) and 4.5(d) by removing the "in Indiana" requirement.[6] *See* Pub.L. No. 222–1999, §§ 3–4, 1999 Ind. Acts 1492–94 (codified at IND.CODE §§ 6–6–4.1–4; 6–6–4.1–4.5 (Supp. 2000)).

Until the Legislature amended sections 4(d) and 4.5(d), however, doubt remained within the Department during the same quarters at issue in the instant case whether the *Bulkmatic* decisions rendered the Exemption unconstitutional in its entirety or in regard to the "in Indiana" language only. This Court removed that doubt with its decision in *Jack Gray,* where the Court found that "the intent of the legislature was never to abolish the exemption completely." *Jack Gray,* 744 N.E.2d at 1076. Accordingly, the Court held that "*Bulkmatic II* and *Bulkmatic III* did not find all of the 1991 amended versions of sections 6–6–4.1–4(d) and 6–6–4.1–4.5(d) unconstitutional but merely the 'in Indiana' limitations present in both statutes to be so."

---

**5.** The Commerce Clause states: "Congress shall have Power ... [t]o regulate Commerce ... among the several States[.]" U.S. CONST. art. I, § 8, cl. 3.

**6.** For MCFT first due and payable after July 31, 1999, the Legislature also required carriers to obtain certification for the proportional use credit, and it capped the amount of proportional use credits the Department could approve in a state fiscal year at $3,500,000. Pub.L. No. 222–1999 §§ 5–6, 1999 Indiana Acts 1494–96 (codified at IND.CODE §§ 6–6–4.1–4.7; 6–6–4.1–4.8).

*Id.* at 1077. As a result, the Court remanded the case to the Department and instructed it to grant the Exemption for the five quarters that are also at issue in the instant case. *Id.*

Waste Management argues that, consistent with the Court's holding in *Jack Gray,* it should receive a refund because it satisfied the statutory requirements for the Exemption. The Department contends that this Court incorrectly decided *Jack Gray* because the Court's holdings in *Bulkmatic II* and *III* rendered the Exemption void in its entirety for the five quarters at issue.[7] Specifically, the Department argues here (as it unsuccessfully argued in *Jack Gray*) that this Court could not, as a matter of law, simply declare the "in Indiana" clause of the Exemption void but could only declare the Exemption void in its entirety.

■ The Legislature has provided that *every* code provision is severable absent an exception. IND.CODE § 1-1-1-8(b); *Jack Gray,* 744 N.E.2d at 1076. To determine whether part of a statute is severable, a court considers—not the location of offending language within a sentence—but "whether the Legislature would have passed the statute had it been presented without the invalid features." *Jack Gray,*

744 N.E.2d at 1076 (citing IND.CODE § 1-1-1-8(b)(1) & (2)).

The Department bases its argument on a misreading of *Wright v. Steers,* 242 Ind. 582, 179 N.E.2d 721 (1962), where our Supreme Court noted that it was impossible to declare one clause in an excise tax statute unconstitutional without splitting the sentence in two.[8] *Wright v. Steers,* 242 Ind. 582, 179 N.E.2d 721, 725 (1962), *reh'g denied.* The Court held that the statute ran afoul of Article X, Section 1 of the Indiana Constitution, "which prevents any exemptions from ad valorem property tax except property used for municipal, educational, literary, scientific, religious or charitable purposes." *Wright,* 179 N.E.2d at 724 (internal quotation marks omitted). The Court, however, ultimately decided not to split the sentence because "the legislature *intended* the provisions in [the] sentence to stand together or fall together." *Id.* at 725 (emphasis added); *accord State v. Gilbert,* 247 Ind. 544, 219 N.E.2d 892, 894 (1966). In other words, legislative intent—not some supposed canon against "sentence splitting"—controlled the Court's decision in *Wright. Wright,* 179 N.E.2d at 725; *see also Gilbert,* 219 N.E.2d at 894. Likewise, legislative intent controlled this Court's decision in *Jack Gray* to void the "in Indiana" clause of the Exemption.[9] *Jack Gray,* 744 N.E.2d at

7. The Department agrees, however, that if this Court follows its decision in *Jack Gray,* then Waste Management is entitled to a proportional use refund of the MCFT it paid during the five quarters.

8. The sentence read, "There is hereby imposed an annual license *excise tax* upon motor vehicles and mobile homes, which tax shall be *in lieu of the ad valorem property tax* levied for state or local purposes, but in addition to any registration fees imposed on such vehicles." *Wright,* 179 N.E.2d at 723 (citing 1961 Indiana Acts 345 § 2) (emphasis in original).

9. Had the *Wright* Court severed the offending language of the Act, it would have created a

new excise tax *in addition to* the annual registration tax and the general property tax on motor vehicles, which would have violated the intent of the Legislature *to replace* the property tax with the excise tax. *See Wright,* 179 N.E.2d at 725. In contrast, this Court's decision in *Jack Gray* created no additional tax, but rather preserved the Exemption, which the Legislature never intended to abolish. *See Jack Gray,* 744 N.E.2d at 1076. Moreover, our Supreme Court has acknowledged that "constitutional and unconstitutional provisions may [] be expressed ... *in the same sentence,* and yet be perfectly distinct *and separable,* so that the first may stand though the last fall." *Caldwell v. State,* 187

1076. Accordingly, the Department's argument that this Court incorrectly decided *Jack Gray* is without merit.

Furthermore, the Department's affirmative defense that it was merely administering the Exemption in a non-discriminatory manner by denying *all* refund requests for the five quarters at issue is also without merit. Specifically, the Department argues that this Court in *Bulkmatic III* left open the possibility of the Department removing the Exemption altogether to remedy the discrimination at issue in that case. The Department is mistaken.

This Court resolved the issue of the Exemption's discriminatory effect in *Bulkmatic III* when the Court held the "in Indiana" clause to be unconstitutional; it resolved the issue of whether the Exemption was unconstitutional in its entirety in *Jack Gray* when it held that it was not.[10] *See Bulkmatic III*, 715 N.E.2d at 34; *Jack Gray*, 744 N.E.2d at 1076. Thus, the question for the Department after *Jack Gray* is not *whether* to grant the Exemption; the Legislature intended that the Exemption be granted.[11] *Jack Gray*, 744 N.E.2d at 1076. The question for the Department after *Jack Gray* simply is *who qualifies* for the Exemption.

The Department tries to justify its refusal to comply with the Court's holding in *Jack Gray* by relying on the following sentence from *Bulkmatic III:* "[W]hen a state tax exemption has been declared unconstitutional under the Commerce Clause, the *state* may either apply the exemption in a nondiscriminatory manner or remove the exemption altogether." *Bulkmatic III*, 715 N.E.2d at 34 (emphasis added). The Department has apparently confused itself with the Indiana General Assembly, for it is the Indiana General Assembly—not the Department—to which the Court was referring in that passage when it referred to "the state."[12] The Court's comment in *Bulkmatic III* was limited to how the *Legislature* could fix the unconstitutional portions of the law, which the Legislature did in 1999. *See* Pub.L. No. 222–1999, §§ 3–4, 1999 Ind. Acts 1492–94. Thus, the Department has misconstrued *Bulkmatic III*.

■ As *Jack Gray* indicates, nothing in *Bulkmatic III* rendered the Exemption a nullity in its entirety. *Jack Gray*, 744 N.E.2d at 1077. Consequently, after *Jack Gray* and until the Legislature amended the law in 1999, the Department had no choice but to obey the intent of the Legislature and grant the Exemption to those who qualified for it. *See id.* Therefore, the Department's argument that it is administering the Exemption in a nondiscriminatory matter is without merit. The Court finds that the Department acted contrary to law when it denied Waste

---

Ind. 617, 119 N.E. 999, 1000 (1918) (quoting 1 Lewis' Sutherland on Statutory Construction § 296 (2d ed.)) (emphasis added).

10. In other words, the Legislature did not intend to abolish the *1991 amended version* of the Exemption in its entirety. *Jack Gray, 744* N.E.2d at 1076. Accordingly, the Department's characterization of Waste Management's position as a request to apply the law as it existed *prior* to 1991 is mistaken. Waste Management simply requests that the law be applied in a manner consistent with *Jack Gray*.

11. Hence, the Department's attempt to distinguish the instant case from *Jack Gray* and *Bulkmatic III* on the basis that its denial of the Exemption constitutes a prospective remedy for discriminatory taxation is without merit.

12. The next sentence in *Bulkmatic III* indicates as much: "In this case, the *Indiana General Assembly* has already made that choice by substantially amending the proportional use exemption." *Bulkmatic III*, at 34–35 (emphasis added).

Management's claims for a refund of the MCFT for the five quarters at issue. Accordingly, the Court GRANTS Waste Management's motion for summary judgment.

## CONCLUSION

For the reasons stated, the Court GRANTS Waste Management's motion for summary judgment. The Court RE-MANDS this case to the Department and ORDERS the Department to grant Waste Management's refund claim with interest.[13]

**13.** *See* I<small>ND</small> A<small>DMIN</small>. C<small>ODE</small> tit. 45, r. 13–6–5 (1996) (providing for the calculation of interest on MCFT refunds).