**ROEHL TRANSPORT, INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9404–TA–00141.

Tax Court of Indiana.

July 10, 1995.

Norman R. Garvin, Lynne D. Lidke, Steven A. Pletcher, Scopelitis, Garvin, Light & Hanson, Indianapolis, Richard C. Hutchison, Hutchison, Neidner, Ward & King, Salt Lake City, UT, for petitioner.

Pamela Carter, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Roehl Transport, Inc. (Roehl) appeals the Indiana Department of State Revenue's (the Department) final determination imposing the Motor Carrier Fuel Tax and Motor Carrier Fuel Surcharge Tax (collectively motor carrier fuel tax) under IND.CODE 6-6-4.1 for the years 1989 and 1990 (years in issue).

## ISSUES

Roehl raises two issues for this court's review:

I. Whether a motor carrier is liable for motor carrier fuel tax on fuel consumed while its vehicles idle off the highway.

II. Whether the inclusion of fuel, consumed by a motor carrier while idling off the highway, in the formula used to calculate motor carrier fuel tax liability is unconstitutional.

*FACTS AND PROCEDURAL POSTURE*

The undisputed facts reveal that Roehl is an interstate trucking business headquartered in Marshfield, Wisconsin. As part of its business activities, Roehl operates commercial motor vehicles that travel in and through the State of Indiana. Accordingly, the fuel Roehl consumes while in Indiana is subject to the motor carrier fuel tax.

In 1989, in an effort to increase driver efficiency and reduce vehicle idle time, Roehl purchased and installed a number of Rockwell Trip Master computers in its vehicles. These on-board computers record the amount of time a vehicle idles. More specifically:

> [the computers] record[ ] engine revolutions and speedometer movement. When the driver starts the vehicle's engine, the Trip Master begins to record the time as "idle time." The Trip Master continues to record this time as idle time until it receives a signal from the speedometer that wheel movement has begun.
>
> After wheel movement begins, the Trip Master will only resume its recordation of idle time if the engine sensor sends a signal and the speedometer sensor does not; however, the Trip Master is programmed to allow for an eight minute delay before it begins to record idle time. This eight minute delay is to allow for on-highway idle time, such as delays at railroad crossings and traffic jams. If during this eight minute delay the vehicle moves even slightly, none of the time is recorded as idle time and the eight minute period recommences. Therefore, the Trip Master records only idle time that is greater than eight minutes in duration.

*Stipulated Facts* at ¶ 15. Consequently, Roehl maintains that there are two types of idle time: 1) idle time of less than eight minutes, and 2) idle time of greater than eight minutes. Roehl asserts that idle time of less than eight minutes occurs on the public highway for the purpose of stopping at traffic signals and railroad crossings. Roehl further asserts that idle time of greater than eight minutes occurs off the public highway while: 1) the driver sleeps or rests in the vehicle, 2) the driver leaves the vehicle for

short period to eat, or 3) a product is being loaded on or off the vehicle. Roehl explains that its drivers keep the vehicles running during these extended periods of time to maintain the vehicle's cabin temperature and to prevent the vehicle's fuel from congealing. *See generally Stipulated Facts* at ¶ 16, 17; *Petitioner's Affidavit of Everett Roehl* at 3.

Pursuant to I.C. 6–6–4.1–10, Roehl prepared and filed all required motor carrier fuel quarterly reports for the years in issue. In calculating the amount of tax it owed, Roehl excluded the fuel consumed by its vehicles while idling for periods of eight minutes or longer.

In 1992, the Department audited Roehl's motor carrier fuel tax returns for the years in issue. The Department determined that Roehl had erred in excluding the fuel consumed while idling for periods of eight minutes or longer. As a result, the Department assessed Roehl an additional $18,952.65 in unpaid taxes, plus interest.

Roehl protested the assessment on February 5, 1993. On July 14, 1993, the Department held a hearing by telephone. On October 27, 1993, in its written letter of findings, the Department denied Roehl's protest on the basis that fuel consumed while a vehicle idles, whether on or off Indiana's highways, is to be included for purposes of calculating motor carrier fuel tax liability. On February 18, 1994, Roehl paid under protest the total assessment, including accrued interest, in the amount of $26,915.21. Roehl filed an appeal with this court on April 12, 1994. The case is now before the court on the parties' cross-motions for summary judgment. Additional facts will be supplied as necessary.

*STANDARD OF REVIEW*

■ Summary judgment is appropriate only when *no genuine issues of material fact* exist and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 960. Cross motions for summary judgment do not alter the standard for granting summary judgment. *Safayan v. Indiana Dep't*

*of State Revenue* (1994), Ind.Tax, 631 N.E.2d 25, 26.

## DISCUSSION AND DECISION
### I

Indiana imposes a motor carrier fuel tax "on the consumption of motor fuel by a carrier in its operations on highways in Indiana." I.C. 6–6–4.1–4(a); I.C. 6–6–4.1–4.5(a) (collectively, subsection (a)). Roehl contends that this language is unambiguously clear—the tax is imposed on fuel consumed *on Indiana highways* only. Therefore, fuel consumed *off the highway* is not taxable. Thus, Roehl claims that the Department erred in including in its calculation of motor carrier fuel tax liability that fuel consumed by Roehl while its vehicles idled for a period of eight minutes or longer, as that fuel was consumed in privately owned parking lots and loading areas, and not "on highways."

▮ While Roehl's argument is persuasive, the foremost rule of statutory construction is to determine the legislature's intent in drafting a statute. *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580, *aff'd* (1992), Ind., 585 N.E.2d 1336. To accomplish this task, the court will not only give statutory words and phrases their plain, ordinary, and usual meaning, *Knauf Fiber Glass,* 629 N.E.2d at 961, but it will also read the statute as a whole, and not sections or parts of it piecemeal. *State v. Adams* (1992), Ind.App., 583 N.E.2d 799, 800, *trans. denied.* Indeed, "[e]ach part [of a statute] must be considered with reference to all other parts [of a statute]." *Id.*

Of particular importance, then, is the language in I.C. 6–6–4.1–4(b) and I.C. 6–6–4.1–4.5(b) (collectively, subsection (b)), which provides:

> [t]he amount of motor fuel consumed by a carrier in its operations on highways in Indiana is the total amount of motor fuel consumed in its entire operations within and without Indiana, multiplied by a fraction. The numerator of the fraction is the total number of miles traveled on highways in Indiana, and the denominator of the fraction is the total number of miles traveled within and without Indiana.

(Emphasis added). *See also* 45 I.A.C. 13–4–5; 45 I.A.C. 13–8.5–2. Thus, by reading subsection (a) and subsection (b) together, it is apparent that subsection (a) establishes that the motor carrier fuel tax will be imposed when there is "consumption of motor fuel by a carrier in its operations on highways in Indiana." *See also Area Interstate Trucking, Inc. v. Indiana Dep't of Revenue* (1992), Ind.Tax, 605 N.E.2d 272, 277, *cert. denied,* —— U.S. ——, 114 S.Ct. 183, 126 L.Ed.2d 142. For purposes of calculating how much motor carrier fuel tax is due, however, subsection (b) *defines* the amount of fuel consumed by a carrier "in its operations on highways in Indiana." That definition provides that the total amount of fuel consumed in a carrier's entire operations, regardless of where or in what manner it was consumed, is to be included in the formula used to calculate motor carrier fuel tax liability.

Roehl asserts, however, that the definition provided in subsection (b) is ambiguous. Specifically, Roehl argues that because the phrase "entire operations" is not defined, it must be read literally. As a result, "entire operations" means "every gallon of motor fuel consumed by every vehicle, machine and fuel consuming equipment belonging to the motor carrier," including fuel used to power Roehl's lawn mowers, generators, and company automobiles. *Petitioner's Brief in Support of Motion for Summary Judgment* at 12. That interpretation, maintains Roehl, results in an absurdity because the legislature did not intend to tax all motor fuel. Accordingly, Roehl maintains that the phrase "entire operations" must mean "entire operations of nonexempt commercial motor vehicles on the highways." *Petitioner's Brief in Support of Motion for Summary Judgment* at 11.

▮ This court will not overemphasize a strict literal or selective reading of the phrase "entire operations." *See Area Interstate,* 605 N.E.2d at 274. The legislature's manifest intent in enacting the motor carrier fuel tax is to charge motor carriers for operating their *commercial motor vehicles* on the

roads of Indiana. *Id.* at 277. A commercial motor vehicle is defined as:

(1) passenger vehicle that has seats for more than nine (9) passengers in addition to the driver;

(2) road tractor;

(3) tractor truck;

(4) truck having more than two (2) axles;

(5) truck having a gross weight greater than twenty-six thousand (26,000) pounds; and

(6) vehicle used in combination if the gross weight of the combination is greater than twenty-six thousand (26,000) pounds;

that is propelled by motor fuel.

I.C. 6–6–4.1–2(a). Consequently, Roehl need not be worried about paying motor carrier fuel tax on the fuel it consumes to operate its lawn mowers, generators, or company automobiles, as those devices are not commercial motor vehicles and are not subject to the motor carrier fuel tax. *Id.; see also* 45 I.A.C. 13–1–2; 45 I.A.C. 13–1–3.

Furthermore, because the legislature has defined what fuel is consumed by a motor carrier "in its operations on highways in Indiana," the court is bound by that definition, regardless of any other meaning that could be attributed to the phrase "entire operations." *See Tillman v. Snow* (1991), Ind.App., 571 N.E.2d 578, 580. Indeed, the word "entire" means "with no element or part excepted." *Webster's Third New International Dictionary* (1981) 758. The effect of adding the words "on highways" after the phrase "entire operations" is "to remove an element or except a part" of fuel from the calculation. Had the legislature intended to except a portion of fuel from the calculation, it would have included the words "on highways" in the first part of the formula. The legislature, however, did not. Accordingly, the fuel consumed by a carrier "in its entire operations within and without Indiana," is the total amount of fuel consumed by a carrier, both on the highway and off the highway, within and without Indiana, multiplied by a fraction.

Finally, Roehl contends that the Department's own regulations support the position that fuel consumed off the highway is not to be included for purposes of calculating motor carrier fuel tax liability. First, Roehl cites 45 I.A.C. 13–4–4 which provides that "[a]ll motor fuel placed into a fuel supply tank of a commercial motor vehicle is presumed to be consumed by that vehicle solely for the purpose of propelling the vehicle along highways." Roehl suggests that had the legislature truly intended to tax all fuel consumed, regardless of where or how it is consumed, there would be no need for the Department to "presume that the fuel is consumed *solely* for the purpose of propelling the vehicle along the *highways.*" In other words, Roehl argues that because the Department created a presumption, the Department inferred that a taxpayer can overcome, or rebut, the presumption. As a result, Roehl argues that if it can demonstrate that the fuel placed in its supply tanks was consumed for purposes other than propelling its commercial motor vehicles along the highways, the motor carrier fuel tax does not apply.

The court agrees that not all fuel consumed by a commercial motor vehicle is subject to the motor carrier fuel tax. Indeed, the legislature has exempted fuel consumed to operate auxiliary equipment on motor vehicles that have a common fuel reservoir for both the locomotion of the vehicle and the operation of the auxiliary equipment. I.C. 6–6–4.1–4(d); I.C. 6–6–4.1–4.5(d). Thus, for purposes of rebutting the presumption in 45 I.A.C. 13–4–4, all fuel placed in a supply tank of a commercial motor vehicle is presumed to have been consumed "on the highways" *unless* the carrier can show it used a portion of the fuel to operate its auxiliary equipment.

Next, Roehl cites to departmental regulation 45 I.A.C. 13–4–7, which establishes the presumptive proportional use exemptions for thirty-four different types of motor vehicles that utilize one supply tank for both locomotion and operation of its auxiliary equipment. *See also* 45 I.A.C. 13–8.5–4. Roehl specifically points to subsection (d), the "catch-all" section:

Notwithstanding the provisions of subsection (b) (1–34) [*subsection (b)* ], motor carriers not listed in subsection (b)(1–34) [*subsection (b)* ] which consume portions of fuel from a common fuel reservoir for a com-

mercial purpose other than locomotion on a public highway in Indiana are eligible for a proportional use exemption to be determined by the administrator after:

(1) a showing by the person or carrier of the proportion of motor fuel used for the operation of equipment other than for locomotion on the public highway; and (2) presentation of documents and information as requested by the administrator.

45 I.A.C. 13–4–7(d) (emphasis in original).[1] Roehl contends that it has adequately shown that it uses a portion of its fuel for a purpose other than locomotion because the fuel its vehicles consume while idling off the highways is principally consumed to provide warmth and air conditioning during periods of rest and sleep for Roehl drivers. Furthermore,

[t]he rest and sleep of Roehl drivers is an essential part of delivering goods and products to clients and customers of Roehl. *Such a use is directly analogous to the 34 enumerated uses set forth in subsection (b) of Rule 45 I.A.C. 13–4–7 and qualifies Roehl for the "exemption" under 45 I.A.C. 13–4–7(d).*

*Petitioner's Brief in Support of Motion for Summary Judgment* at 16 (emphasis added). The court disagrees.

■ The Department issues rules and regulations to implement a statute, and those rules and regulations have the force of law. *C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1381. "The Department cannot, however, enlarge or vary by its rules and regulations

the power conferred on it by the legislature or create a rule out of harmony with the statute." *Id.* Both I.C. 6–6–4.1–4(d) and I.C. 6–6–4.1–4.5(d) create an exemption for vehicles that use one supply tank for both locomotion *and* the operation of auxiliary equipment. Departmental regulation 45 I.A.C. 13–4–7 merely establishes the amount of the exemption, dependent upon the type of motor vehicle or auxiliary equipment used. While 45 I.A.C. 13–4–7 lists different types of vehicles and their proportional exemptions, that list is not exhaustive. As a result, 45 I.A.C. 13–4–7(f) (1988 ed.)[2] provides an exemption for those carriers who do not fall within one of the listed exemptions, but who can demonstrate that they operate motor vehicles that use one fuel tank for both locomotion *and* the operation of auxiliary equipment.

In the case at bar, Roehl's vehicles do not operate auxiliary equipment. Rather, its vehicles keep their engines running while they idle for periods of eight minutes or more. Had the legislature intended to exempt carriers from paying motor carrier fuel tax on the fuel they consume while idling for an extended period of time, it could have provided a similar provision like I.C. 6–6–4.1–4(d) and I.C. 6–6–4.1–4.5(d). The legislature, however, did not.

■ In light of I.C. 6–6–4.1–4 and I.C. 6–6–4.1–4.5, as well as the Department's regulations, the court holds that all fuel consumed by a commercial motor vehicle, regardless of where and how it is consumed, is to be included in the formula for purposes of calculating motor carrier fuel tax liability.

---

1. Roehl cites the language of the 1991 amendment to the regulation. During the years in issue, however, the regulation contained different language. *See* 45 I.A.C. 13–4–7 (1988 ed.). Indeed, the regulation in its 1988 form is substantially different than the regulation in its 1991 form, as it only provided proportional use exemptions for five types of motor vehicles that utilized a common fuel reservoir for both locomotion and operation of auxiliary equipment. Furthermore, the 1988 regulation's equivalent to the 1991's version of subsection (d) reads:

(f) A proportion of the tax imposed under I.C, 6–6–4.1–4 may be determined, by the administrator, not to apply to the motor fuel consumed on Indiana highways by firetrucks, street-

sweepers and other motor vehicles which have a common fuel reservoir for both locomotion on the highway and the operation of other equipment after:

(1) a showing by the person or carrier of the proportion of motor fuel used for the operation of equipment other than for locomotion along the highway; and
(2) presentation of documents and information as requested by the administrator.

Roehl's failure to cite the proper language of the regulation, however, does not affect its argument or the court's holding.

2. Or, as Roehl cites, 45 I.A.C. 13–4–7(d) (1991 amendment).

## II

Roehl asserts that to include fuel consumed while idling off the highway in the formula for purposes of calculating motor carrier fuel tax liability violates the Commerce Clause of the United States Constitution and the equal protection guarantees set forth in both the Fourteenth Amendment to the U.S. Constitution and Article 1, § 23 of the Indiana Constitution. The court notes, however, that "[d]uly promulgated statutes enjoy a strong presumption of constitutionality, and the party challenging the constitutionality bears the burden to overcome the presumption." *Mid–America Mailers, Inc. v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 639 N.E.2d 380, 386.

### A. THE COMMERCE CLAUSE

■ In 1977, the United States Supreme Court expressly rejected the view that interstate commerce is immune from state taxation. *See Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 288, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326, 336–37. *See also Goldberg v. Sweet* (1989), 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607. Consequently, a state tax will withstand a challenge under the Commerce Clause if "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331.

In the case at bar, Roehl only challenges whether Indiana's motor carrier fuel tax is fairly apportioned. Indeed, Roehl maintains that "[p]ractically all fuel consumed by Roehl vehicles [while idling off the highway] is consumed in states other than Indiana." *Petitioner's Brief in Support of Motion for Summary Judgment* at 17. Consequently, Roehl argues that if it is required to include *all* gallons of fuel consumed, regardless of where and in what manner, it will be subject to a disproportionately higher assessment in Indiana than it should be. In other words, Roehl contends that Indiana is imposing a tax on fuel consumed outside its borders.

As stated earlier, Indiana's motor carrier fuel tax is imposed when a motor carrier consumes motor fuel "in its operations on highways in Indiana." I.C. 6–6–4.1–4(a); I.C. 6–6–4.1–4.5(a). To calculate liability under that tax, $0.27[3] is multiplied by the number of gallons of fuel consumed by a motor carrier in its operations on highways in Indiana, which is equal to:

| TOTAL AMOUNT OF MOTOR FUEL CONSUMED IN ITS ENTIRE OPERATIONS WITHIN AND WITHOUT INDIANA | X | TOTAL NUMBER OF MILES TRAVELED ON HIGHWAYS IN INDIANA / TOTAL NUMBER OF MILES TRAVELED WITHIN AND WITHOUT INDIANA |
|---|---|---|

I.C. 6–6–4.1–4(b); I.C. 6–6–4.1–4.5(b); *Area Interstate,* 605 N.E.2d at 276.

This formula measures the proportion of miles traveled on Indiana highways to the total number of miles traveled (i.e., miles traveled on Indiana highways, miles traveled off Indiana highways, and miles traveled outside Indiana). *Overall* fuel consumption is then allocated accordingly in order to ensure the protections guaranteed by the Commerce Clause. *See Area Interstate,* 605 N.E.2d at 276, fn. 7. Indeed, Indiana must take into account the total amount of fuel consumed, regardless of where and in what manner, to *apportion* fuel consumed on Indiana highways.

Roehl contends, however, that the formula for calculating motor carrier fuel tax liability does not calculate its "true" miles per gallon figure. Specifically:

[t]o require Roehl to include the number of gallons consumed stationary off highway in the calculation of miles per gallon, the Department has artificially decreased the

3. Under I.C. 6–6–4.1–4, the motor carrier fuel tax is imposed at $0.16 per gallon. *See also* IND.CODE 6–6–2.1–201. The surtax under I.C. 6–6–4.1–4.5(a) is imposed at a rate of $0.11 per gallon. Accordingly, the total motor carrier fuel tax is $0.27 per gallon. *See Area Interstate,* 605 N.E.2d at 276, fn. 7.

true miles per gallon of the Roehl fleet. The understated miles per gallon rate results in an erroneously reported increased number of gallons of fuel consumed on highways in Indiana.

*Petitioner's Brief in Support of Motion for Summary Judgment* at 17.

■ Roehl misses the point. By considering both the total amount fuel consumed and the total number of miles traveled in calculating motor carrier fuel tax liability, the formula recognizes that a motor carrier will travel fewer miles per gallon if part of that gallon is consumed while idling. Accordingly, "motor carriers are subject to varying tax liabilities per mile, *depending upon the rate and manner of fuel consumption.*" *Area Interstate,* 605 N.E.2d at 276 (emphasis added); 45 I.A.C. 13–4–4 (fuel consumed while idling is included in the total gallons of fuel consumed).

■ Furthermore, Indiana's motor carrier fuel tax is a use tax. *Area Interstate,* 605 N.E.2d at 277. The Federal Constitution does not require Indiana to establish a system of motor carrier fuel taxation that reflects "with exact precision every graduation in use." *See Aero Mayflower Transit Co. v. Bd. of R.R. Comm'rs* (1947), 332 U.S. 495, 506, n. 19, 68 S.Ct. 167, 173, 92 L.Ed. 99, 108. Indeed, it is nearly impossible to calculate "drop-for-drop," "fume-for-fume," the exact amount of fuel Roehl consumes on the highway. *See Capitol Greyhound Lines v. Brice* (1950), 339 U.S. 542, 546, 70 S.Ct. 806, 809, 94 L.Ed. 1053, 1057 (precise apportionment is an administrative impossibility). As a result, "as long as [the amount of tax] is based on some fair approximation of use or privilege

for use ... and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred, it will pass constitutional muster ...." *Evansville–Vanderburgh Airport Authority Dist. et al. v. Delta Airlines, Inc., et al.* (1972), 405 U.S. 707, 716–717, 92 S.Ct. 1349, 1355, 31 L.Ed.2d 620, 629 (a flat service fee imposed on airline passengers to help defray the cost of future airport construction and maintenance does not violate the United States Commerce Clause).

In the case at bar, Roehl has not shown that the formula by which motor carrier fuel tax liability is calculated discriminates against interstate commerce to the advantage of intrastate carriers, nor has Roehl shown that the method for calculating motor carrier fuel tax liability does not reflect a fair approximation of the use of Indiana's highways. Furthermore, Roehl has not shown that, although the motor carrier fuel tax is apportioned on the basis of the benefit of Roehl's use of Indiana's public roads, the resulting liability is excessive in relation to Indiana's costs for the upkeep and reconstruction of its highway system.[4] As a result, the court holds that Indiana's formula for calculating motor carrier fuel tax liability does not violate the Commerce Clause of the United States Constitution.[5]

## B. EQUAL PROTECTION

Roehl also claims that it is being denied equal protection of the law under the Fourteenth Amendment to the U.S. Constitution

---

4. The revenue from the motor carrier fuel tax provides resources for the construction, reconstruction, and maintenance of the state's highway system. *See generally* IND.CODE 8–14–1.

5. In any event, Roehl has failed to show that the fuel it consumes while idling for periods of eight minutes or longer is consumed "off the highway," let alone outside Indiana. Indeed, while Roehl states that idling for periods of eight minutes or more necessarily constitutes off-highway consumption for purposes of its summary judgment motion, *Petitioner's Affidavit of Everett Roehl* at 3, the Department has submitted an opposing affidavit, pursuant to T.R. 56(C), to set forth specific circumstances in which an eight

minute idle period can occur *on* Indiana highways. *See* T.R. 56(E); *Respondent's Affidavit of Martin A. Murphy* at 2.

Furthermore, while Roehl's Rockwell Trip Master computers track idle time, they do not track when or where that idle time occurs. *Stipulated Facts* at ¶ 20. Accordingly, Roehl's computers treat as identical vehicles: 1) idling at a privately owned truck stop for periods of eight minutes; 2) vehicles idling on an Indiana highway for periods of eight minutes; and 3) vehicles idling on a highway outside Indiana's borders for periods of eight minutes. *See US Xpress, Inc. v. Utah State Tax Comm'n* (1994), Utah App., 886 P.2d 1115, 1119, fn. 5.

and Article I, § 23 of the Indiana Constitution.[6] The court disagrees.

When neither a fundamental right nor a suspect class is involved, a statute must meet a rational basis test in order to withstand equal protection scrutiny. Indeed:

> [T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'

*Area Interstate*, 605 N.E.2d at 275 (quoting *Championship Wrestling, Inc. v. State Boxing Comm'n* (1985), Ind.App., 477 N.E.2d 302, 305, *trans. denied.*)

In *Area Interstate*, this court explained that while the purpose of the motor carrier fuel tax is to charge motor carriers for their use of Indiana's roads, "fuel consumed in the operation of auxiliary equipment is not necessarily linked to the use of the state's highways." *Area Interstate*, 605 N.E.2d at 277. Consequently, that portion of fuel used to operate auxiliary equipment is entitled to a proportional exemption under I.C. 6–6–4.1–4(d) and I.C. 6–6–4.1–4.5(d). Roehl contends that because it consumes fuel off the highway, it is similarly situated to motor carriers who operate auxiliary equipment. More specifically, Roehl states:

> [t]hirty-four different types of vehicle operators, under 45 I.A.C. 13–4–7, are entitled to a blanket percentage "exemption" from their Fuel Tax liability without the need for any evidence of their off-highway fuel use; yet, Roehl—a taxpayer that stands ready with proof of its off-highway fuel use—is denied the same benefits in calculating its Fuel Tax liability.

*Petitioner's Brief in Support of Motion for Summary Judgment* at 21.

Under the Equal Protection Clause, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. *See also*

IND. CONST. art. 1, § 23. Nevertheless, the Equal Protection Clause "does not forbid classifications. It simply keeps governmental decision makers from treating differently persons, who are in all relevant respects alike." *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1, 12.

In the case at bar, Roehl is treated no differently than auxiliary equipment users. Indeed, all fuel consumed by Roehl, as well as by motor carriers who operate auxiliary equipment, is included in the formula for calculating motor carrier fuel tax liability, regardless of where and how the fuel is consumed.

Roehl is treated differently than auxiliary equipment users, however, only with respect to that portion of fuel used to operate the auxiliary equipment while the vehicle is being propelled on the highway. Why? Because Roehl does not operate auxiliary equipment while on the highway. Consequently, a sufficient difference exists that justifies separate classification and differential tax treatment. *See Area Interstate*, 605 N.E.2d at 277 (citing *State Bd. of Tax Comm'rs v. Jackson* (1931), 283 U.S. 527, 537–543, 51 S.Ct. 540, 543–545, 75 L.Ed. 1248; *Miles v. Dep't of Treasury* (1935), 209 Ind. 172, 190, 199 N.E. 372, 380, *appeal dismissed* (1936), 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372).

Accordingly, Roehl has not been singled out for separate treatment nor is it similarly situated with motor carriers who consume a portion of their fuel from for the operation of auxiliary equipment. Therefore, Roehl's equal protection guarantees have not been violated.

## CONCLUSION

For the foregoing reasons, this court holds that the total amount of fuel consumed, regardless of where and how it is consumed, is included in the formula for calculating motor carrier fuel tax liability. In so doing, neither the United States nor the Indiana Constitution is offended. Accordingly, Roehl's motion for summary judgment is DENIED.

---

**6.** The rights guaranteed under both constitutional provisions are identical. *Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 526, 289 N.E.2d 495, 501.

Summary judgment is hereby GRANTED in favor of the Department.