ATTORNEYS FOR PETITIONER:
**MAGGIE L. SMITH**
**DARREN A. CRAIG**
FBT GIBBONS
Indianapolis, IN

**DANIEL G. MUDD**
FBT GIBBONS
Louisville, KY

ATTORNEYS FOR RESPONDENT:
**THEODORE E. ROKITA**
ATTORNEY GENERAL OF INDIANA
**LYDIA A. GOLTEN**
**MICHELLE R. WYATT**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., )<br><br>Petitioner, )<br><br>v. )<br><br>INDIANA DEPARMENT OF<br>STATE REVENUE, )<br><br>Respondent. ) | Case No. 24T-TA-00018 |

FILED
Apr 22 2026, 1:38 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**April 22, 2026**

MCADAM, J.

This appeal presents a question of statutory interpretation. The Court must determine whether fuel used to propel motor vehicles on private roads constitutes "fuel used for nonhighway purposes." Indiana's Special Fuel Tax applies to "all special fuel sold or used in producing or generating power for propelling motor vehicles" but exempts fuel that is "used for nonhighway purposes." IND. CODE §§ 6-6-2.5-28(a),

1

6-6-2.5-30(a)(8) (2017). At the administrative level, the Indiana Department of State Revenue determined that fuel used by United Parcel Service, Inc. ("UPS") vehicles on private roads was not "fuel used for nonhighway purposes" and denied UPS's claims for refund of the Special Fuel Tax it paid on fuel used on private roads. Based on the plain and ordinary meaning of the statutory language, the Court concludes that fuel used on private roads is "used for nonhighway purposes," and grants partial summary judgment in favor of UPS.

### FACTS AND PROCEDURAL HISTORY

The following facts are not disputed and are based on the parties' joint stipulations of fact submitted in conjunction with their cross-motions for summary judgment.

UPS delivers packages across Indiana using a fleet of vehicles it calls "Package Cars." These Package Cars are the large brown vans bearing the UPS logo that are commonly seen in communities around the state and elsewhere.

Every Package Car contains a telematics device that continuously records data about the vehicle's location and performance (e.g., speed, braking, engine and battery performance). These devices emit "pings", or signals, that memorialize the vehicle's geographic coordinates any time the Package Car performs certain functions like turning, braking, accelerating, etc. These pings are time stamped and can occur as often as every second. From this data, UPS is able to map its Package Cars' routes and quantify the number of miles and gallons of fuel used by them.

During the years at issue, UPS's Package Cars consumed undyed special fuel[1]

---

[1] Special fuel is statutorily defined as "all combustible gases and liquids that are: (1) suitable for the generation of power in an internal combustion engine or motor; or (2) used exclusively for heating,

as they navigated public highways and private property, including private drives, roads, parking lots, residential roadways, and similar properties (collectively referred to as "Private Roads"). On account of this use, UPS paid Special Fuel Tax for tax years 2018 through 2019 on the fuel consumed by the Package Cars. (Jt. Stip. at 3 ¶¶ 10, 1.) Subsequently, in late August of 2020, UPS submitted four separate refund claims for the Special Fuel Tax paid with respect to the Package Cars' consumption of special fuel on private roads. UPS sought refunds of $47,228.42 and $52,713.12 for the first and second halves of calendar year 2018 and refunds of $47,983.68 and $53,171.86 for the first and second halves of 2019.

The Department's Special Tax Division denied the refund claims, stating that UPS did not meet "the requirements for a refund of the special fuel tax used for nonhighway purposes." (Jt. Stip., Doc. 5 at 36; *accord* Jt. Stip., Doc. 5 at 72, 109, 147.) UPS then filed protests of the refund denials with the Department's Legal Division. After holding an administrative hearing on the matter, the Legal Division issued separate final orders, affirming the refund denials. (*See* Jt. Stip., Doc. 6.) The Legal Division explained:

> Regardless of whether [UPS's] vehicles are operating on a highway or in a parking lot, the purpose of the fuel placed in the vehicles' tanks is to propel the vehicles upon a highway. [UPS's] travel of its vehicles on private drives and parking lots is an ancillary use . . . . In order to complete its business purpose of delivering packages, [UPS] must utilize private drives and parking lots; however, the main purpose of purchasing special fuel and placing it in the fuel tanks is to propel the vehicles upon the highway to deliver packages to a final destination.

---

industrial, or farm purposes other than for the operation of a motor vehicle." IND. CODE § 6-6-2.5-22 (2014). Undyed special fuel is fuel that lacks an additive dye indicating that the fuel has been exempted from the Special Fuel Tax. *Cf.* IND. CODE § 6-6-2.5-31(a) (requiring that special fuel exempted under Subpart 30(a)(8) "shall have dye added to it at or before the time of withdrawal at a terminal or refinery rack").

(Jt. Stip., Doc. 6 at 7, 14, 21, 28.) These final orders were the Department's final word on the matter at the administrative level.

UPS appealed the Department's decision to this Court, and the parties have now presented cross-motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "Summary judgment is designed to provide speedy resolution to those cases—or those parts of cases—that may be determined as a matter of law because there are no factual disputes." *Pinnacle Ent., Inc. v. Indiana Dep't of State Revenue*, 32 N.E.3d 1216, 1218 (Ind. Tax Ct. 2015). Summary judgment is appropriate "if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court." *Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259, 1261 (Ind. Ct. App. 1993). However, "[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court." Ind. Trial Rule 56(C). "When reviewing a motion for summary judgment, the Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the non-moving party." *Crown Prop. Grp., LLC v. Ind. Dep't of State Revenue*, 135 N.E.3d 671, 675 (Ind. Tax Ct. 2019). "Cross-motions for summary judgment do not alter this standard." *Id.* The Tax Court reviews final determinations of the Department *de novo*, IND. CODE § 6-8.1-5-1(i) (2019), and accordingly the Court is not bound by the evidence or the issues raised at the

4

administrative level, *see Subaru-Isuzu Auto., Inc. v. Indiana Dep't of State Revenue*, 782 N.E.2d 1071, 1073 (Ind. Tax Ct. 2003).

## DISCUSSION

The issue before the Court is whether, as a matter of law, the special fuel purchased by UPS that it used to propel its Package Cars on private, nonhighway roads, is exempt from Indiana's Special Fuel Tax. As noted in the introduction, Special Fuel Tax is imposed on "all special fuel sold or used in producing or generating power for propelling motor vehicles." IND. CODE § 6-6-2.5-28(a) (2017). The statute, however, exempts fuel that is "used for nonhighway purposes, used as heating oil, or in trains." IND. CODE § 6-6-2.5-30(a)(8) (2017) (unchanged in relevant part since enactment in 1993).[2]

UPS contends that the fuel used to propel its Package Cars on private roads is "used for nonhighway purposes" because the fuel is not used on highways. UPS argues the Special Fuel Tax focuses on actual "use" — the locations where fuel is physically consumed — not on the overall business operations of a taxpayer as the Department urges. UPS argues that, because the parties have stipulated that Private Roads do not constitute a "public highway" or "highway" for purposes of the Special Fuel Tax (*see* Jt. Stip. at 5 ¶ 10), its fuel consumption on Private Roads falls squarely within the statutory language for special fuel "used for nonhighway purposes."

The Department disagrees and counters with three reasons why the exemption

---

[2] UPS notes that Subpart 30(a)(8) is potentially applicable here in two ways: (1) as an "exception" to tax imposition under Subpart 28(a), and (2) as an "exemption" from tax provided pursuant to Subpart 30(a)(8). (*See* Pet'r's Br. Supp. Mot. Summ. J. at 8–9.) Resolution of this thorny question is unnecessary here, however, because the Court does not find that the statute is ambiguous and finds that the fuel qualifies for exemption under Subpart 30(a)(8).

provided in Subpart 30(a)(8) does not apply to UPS. First, it claims that the Special Fuel Tax is "a tax based upon the business in which a company engages" and "should apply" to fuel used for "incidental travel" on private roads. (Resp't's Br. Supp. Cross Mot. Summ. J. & Resp. Pet'r's Mot. Summ. J. at 6 [hereinafter "Resp't's Br. Supp. Summ. J."]). Second, it claims that the exemption applies only to vehicles not registered for highway use, which necessarily excludes UPS's Package Cars because they are registered for general highway use. (*See* Resp't's Br. Supp. Summ. J. at 11.) Third, and finally, the Department contends that the exemption only applies to dyed fuel and therefore does not apply to UPS because the parties agree that the fuel used in UPS's Package Cars was undyed. (*See* Resp't's Br. Supp. Summ. J. at 4–5.)

After examining the statute and the parties' arguments, the Court concludes that the plain and ordinary meaning of "used for nonhighway purposes" includes fuel used for travel on private roads. The exemption imposes no limitation based on the business in which a company engages and is concerned only with the purpose for which the fuel is used. Moreover, according to its plain text, the exemption applies whether the fuel is dyed or undyed and does not turn on whether a vehicle is registered for highway use.

### I.  The exemption includes driving on private roads.

When interpreting a statute, courts start with its clear and unambiguous meaning and apply its terms in their plain, ordinary, and usual sense without resorting to other canons of statutory construction. *See Calvary Temple Church of Evansville, Inc. v. Kirsch*, 251 N.E.3d 1056, 1059 (Ind. 2025). The plain and unambiguous meaning of a statute is the meaning that "virtually anyone competent to understand it, and desiring fairly and impartially to ascertain its signification, would attribute to the expression in its

6

context . . . ." *Johnson Cnty. Farm Bureau Coop. Ass'n. v. Indiana Dep't of State Revenue*, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991) (quoting *Hutton v. Phillips*, 70 A.2d 15, 17 (Del. Super. Ct. 1949)), *aff'd, adopted, and incorporated by reference*, 585 N.E.2d 1336 (Ind. 1992). It implies that the meaning attributed is "rational and 'makes sense'" and that any other meaning, in comparison, would appear "strained, or farfetched, or unusual or unlikely." *Id.* To determine plain meaning, courts generally avoid legal or other specialized dictionaries and turn instead to general-language dictionaries. *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019). Courts may not expand or contract the meaning of an unambiguous statute by reading into it language to correct supposed omissions or defects and may not substitute language that it feels the legislature may have intended. *See, e.g.*, *Mi.D. v. State*, 57 N.E.3d 809, 812 (Ind. 2016) (indicating courts must heed both what statutory language says and what it does not say).

### A. The plain and ordinary meaning of the exemption includes fuel used to propel motor vehicles on private roads.

A plain reading of Subpart 30(a)(8) affirms that the phrase "used for nonhighway purposes" refers to special fuel that is used for reasons not related to or not involving public roads. While the statute does not provide a definition for the term "nonhighway purposes," the plain and ordinary meaning of the words "purposes" and "nonhighway" are easily ascertained. The word "purposes" means "the reason[s] for which something exists, or is done, made, used, etc."[3] *Purpose*, RANDOM HOUSE DICTIONARY OF THE

---

[3] The Department defines "purpose" as "the business activity that a corporation is chartered to engage in." (Resp't's Br. Supp. Mot. Summ. J. at 16 (quoting BLACK'S LAW DICTIONARY (12th ed. 2024)).) In turning to Black's Law Dictionary, however, the Department eschews Indiana Supreme Court guidance to consult

7

ENGLISH LANGUAGE 1570 (2d ed. 1987). And, in the simplest terms, a "highway" is a public road and serves as the logical opposite of a private road. Relevant to its use in Subpart 30(a)(8), the word "highway" can be used to delineate the degree to which the public has a right to use the road or to denote the entity responsible for the creation and maintenance of the road. *See Highway*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1069 (1961, 2002 reprint) [hereinafter WEBSTER'S] (defining the word "highway" as "a road or way on land or water that is open to public use as a matter of right whether or not a thoroughfare: a public road or way . . . including the right-of-way — compare PRIVATE WAY"); *id.* (defining a "highway" as a road that is "established and maintained (as by a state) in accordance with law"). Reading the two words together, then, under either definition of the word "highway", the phrase "used for nonhighway purposes" refers to reasons for using fuel that are not related to or do not involve public roads.[4]

Armed with this understanding, the Court finds that fuel used to propel motor vehicles along private roads is used for purposes not related to and not involving public roads and is thus used for "nonhighway purposes." Though the two types of roads often connect, private roads are not public roads. They are physically separate and legally distinct. A vehicle cannot travel on both roads simultaneously. Either a given road is publicly maintained and open to the public for motor vehicle travel, or it is not. Private roads — those not owned by the government — have different owners, different funding

---

general language dictionaries and "avoid legal or other specialized dictionaries." *Rainbow Realty Grp., Inc.*, 131 N.E.3d at 174.

[4] As an adjective, the word "nonhighway" indicates that the purposes implicated are those that are not "highway" purposes. *See* THE CHICAGO MANUAL OF STYLE 248–49 (17th ed. 2017) (explaining that an "adjective" is a word "modifying a noun" and "tells you what sort, how many, how large or small, whose, etc.").

mechanisms, and are often subject to different rules and regulations than their public counterparts. Roads — public and private alike — are instrumentalities. They are the means by which people and goods move from one place to another. Travel on a public road is not the purpose of travel on a private road, and travel on a private road is not the purpose of travel on a public road. In both instances, the road is in service of some other objective — delivering a package, reaching a home, accessing a workplace — that is merely *facilitated* by different types of roads along the way.

Of course, in an abstract sense, almost all, if not all, travel on private roads could be said to relate to or involve public roads because access to most private property invariably requires the use of highways. The Department contends as much when it asserts that UPS's fuel consumption on private roads should nonetheless be taxable because it is incidental to, or in service of, the company's overall highway operations. (*See* Resp't's Br. Supp. Mot. Summ. J. at 6, 16.) By this logic, the fuel consumed on private-road segments of travel serves "highway purposes" since that travel, no matter how prevalent or lengthy, cannot occur but for the highway travel that must occur in reaching the intended destination.

Such a conception of "used for nonhighway purposes" stretches the notion of use too far. If an indirect connection to highway travel were sufficient to establish use for "highway purposes," the statutory question would collapse into a question about whether the taxpayer's vehicle ever touches public roads. But a gallon of fuel that propels a vehicle up a private residential driveway does not become highway-purpose fuel merely because the same vehicle, moments earlier, was traveling on a highway. The character of each use is fixed by what the fuel does at the point of consumption, not

by what the vehicle did before or will do after.

Allowing the highway segments of a trip to determine the tax treatment of the nonhighway segments erases the distinction between highway and nonhighway use drawn by the legislature. What a statute does not say is as important as what it does say. *Indianapolis Pub. Transp. Corp. v. Dep't of Local Gov't Fin.*, 40 N.E.3d 536, 541 (Ind. Tax Ct. 2015) (citing *Hoosier Energy Rural Elec. Coop., Inc. v. Dep't of Local Gov't Fin.*, 820 N.E.2d 787, 791 (Ind. Tax Ct. 2004)). Here, the statute specifically uses the word "highway" to describe the types of "purposes" eligible for exemption. Subpart 30(a)(8) does not use the more expansive term "road" to describe the exemption (e.g., fuel used for "non-*road* purposes"). *See Road*, WEBSTER'S at 1963 (defining "road" in part as "an open way or public passage for vehicles, persons, and animals"). Nor does the exemption include private roads within the meaning of "highway" as the legislature has done in other instances. *See, e.g.*, IND. CODE § 9-25-2-4 (defining "public highway" as "a street, an alley, a road, a highway, or a thoroughfare in Indiana, *including a privately owned business parking lot and drive*, that is used by the public or open to use by the public" (emphasis added)). Instead, the statute specifically uses the word "highway", which has a particular meaning limited to public roads. The Court must give that choice meaning by distinguishing between travel on public roads (i.e., highways) and private roads.[5]

---

[5] Distinguishing public roads (highways) and private roads in the application of the exemption is also consistent with the stated purpose of the Special Fuel Tax. By law, the revenue from the tax must be spent either for "highway purposes" or for traffic safety and traffic policing. IND. CODE § 6-6-2.5-67 (1993); *see C & C Oil Co. v. Indiana Dep't of State Revenue*, 570 N.E.2d 1376, 1381 (Ind. Tax Ct. 1991) (interpreting previous version of the statute). As a tax created to defray the costs of highway use, it is unsurprising that the legislature would limit its reach to highway-related special fuel consumption. Fuel consumed on private roads — driveways, parking lots, and residential roadways — does not cause wear or damage to highway infrastructure. The costs of private-road fuel consumption fall on those nonhighway roads specifically.

## B. *The exemption does not turn on the user's business purpose.*

The Department contends that the Special Fuel Tax is a "tax based upon the business in which a company engages," and therefore the nonhighway purposes exemption in Subpart 30(a)(8) requires an assessment of the user's business purpose. (Resp't's Br. Supp. Mot. Summ. J. at 6.) The Department reasons that the Special Fuel Tax applies what is essentially an "operations-based" test: if a vehicle operates "on highways" as part of its business operations, then all fuel consumed — including during off-highway activities like idling or driving in parking lots — relates to its "highway" operations. (Resp't's Br. Supp. Mot. Summ. J. at 15–16.) Under this reading, actual physical location (private road versus public highway) is irrelevant according to the Department; what matters is whether the taxpayer's operations utilize highways or do not utilize highways. (*See* Resp't's Br. Supp. Mot. Summ. J. at 16.) As such, because, in the Department's opinion, "UPS's purpose is to deliver packages via cross-country highway travel," it is not eligible for the nonhighway purposes exemption. (Resp't's Br. Supp. Mot. Summ. J. at 16.)

The statute, however, does not condition eligibility for the nonhighway purposes exemption contained in Subpart 30(a)(8) on the business of the user. By its text, Indiana Code § 6-6-2.5-28 applies the tax "on all special fuel sold or used in producing or generating power for propelling motor vehicles," save in certain instances unrelated to a business's purpose. *See* IND. CODE § 6-6-2.5-28(a). In turn, the exemption in Subpart 30(a)(8) only speaks of fuel "used for nonhighway purposes," not fuel "used for nonhighway *business* purposes." The exemption draws no distinction between a user's commercial and noncommercial purposes. Importing a "business purposes" requirement

11

into the statutory framework in any capacity would require the addition of words the legislature did not write. The legislature could have excluded businesses whose business is highway-adjacent or whose operations utilize highways, but it did not. *See, e.g.,* IND. CODE § 6-6-1.1-903(a)(6) (2016) (requiring a refund of gasoline tax used for "[o]ther commercial use, except propelling motor vehicles operated in whole or in part on an Indiana public highway"). As written, the text simply does not support the Department's attempt to add a business purpose qualification.

The Department's "business purposes" reading would transform the use-based exemption into a user-based exemption predicated on the nature or character of the user. But the exemption turns on the use of the fuel. IND. CODE § 6-6-2.5-30(a)(8) ("Special fuel *used* for nonhighway purposes") (emphasis added). The user and their business purpose are inconsequential except insofar as they shed light on whether a particular use relates to "highways" or not. Indeed, overlaying a business-purpose understanding on the exemption would threaten to place the exemption beyond the reach of individuals using special fuel for personal reasons. And it would potentially place beyond taxation the use of special fuel on highways by the many businesses who utilize highways but do not to the same degree as UPS and therefore potentially have a "nonhighway" business purpose.

The Department attempts to support its business purpose limitation with this Court's interpretation of a related, but distinct, fuel tax statute, the Motor Carrier Fuel Tax (MCFT) in *Roehl Transport, Inc. v. Indiana Department of State Revenue*, 653 N.E.2d 539 (Ind. Tax Ct. 1995). This Court's decision in *Roehl* turned on specific statutory language in the MCFT that has no parallel in the Special Fuel Tax. That

12

language provided: "The amount of motor fuel consumed by a carrier in its operations on highways in Indiana is the total amount of motor fuel consumed *in its entire operations* within and without Indiana, multiplied by a fraction."

IND. CODE § 6-6-4.1-4(b) (1987) (emphasis added). The Court held that this language expressly required the inclusion of all fuel consumed by the fuel user — both on-highway and off-highway — because the statute included the "entire operations" of the user in Indiana in the tax base. The Court concluded:

> Had the legislature intended to except a portion of fuel from the calculation, it would have included the words "on highways" in the first part of the formula. The legislature, however, did not. Accordingly, the fuel consumed by a carrier "in its entire operations within and without Indiana," is the total amount of fuel consumed by a carrier, both on the highway and off the highway, within and without Indiana, multiplied by a fraction.

*Roehl*, 653 N.E.2d at 543.

Because the Special Fuel Tax does not contain language analogous to that used in the MCFT — specifically the "entire operations" language — *Roehl* cannot bear the weight the Department places on it. *Roehl* interpreted a fundamentally different statute and does not control here. Unlike the MCFT, the Special Fuel Tax contains no "entire operations" language. Where, according to *Roehl*, the MCFT explicitly includes all fuel "in its entire operations," the Special Fuel Tax explicitly excludes fuel used for nonhighway purposes. *See* IND. CODE § 6-6-2.5-28(a). The MCFT's inclusion of all operations cannot override the Special Fuel Tax's exclusion of nonhighway fuel. These are opposite legislative choices, which *Roehl* itself recognized. Here, by contrast, the legislature did exactly what this Court in *Roehl* said was required for the MCFT — it included explicit language excepting "nonhighway" fuel from the Special Fuel Tax.

## II. The exemption applies to vehicles registered for highway use.

13

The Department next claims that only vehicles not registered for highway use qualify for the nonhighway use exemption. (*See* Resp't's Br. Supp. Mot. Summ. J. at 11.) According to the Department, certain provisions of the federal fuel tax statutes govern the application of Indiana's special fuel tax regime. The Department specifically points to Section 4082 of the Internal Revenue Code, Title 26 of the United States Code, which is referenced in Indiana Code § 6-6-2.5-62(c). Section 4082 provides an exemption from the federal fuel tax for fuel used for "off-highway business use," which the Department says does not include vehicles "registered, or required to be registered, for highway use." Thus, because Section 4082 is referenced in Indiana Code § 6-6-2.5-62(c), the Department asserts that the federal definition of "off-highway business use" "ultimately guides" the application of the nonhighway purposes exemption in Indiana Subpart 30(a)(8). (Resp't's Br. Supp. Mot. Summ. J. at 8 (claiming that 26 U.S.C. § 6421 is statutorily incorporated and ultimately guides Subpart 30(a)(8)).) Applying that reasoning to UPS, the Department concludes that UPS is not eligible for the "nonhighway purposes" exemption in Subpart 30(a)(8) because its Package Cars are registered for highway use.

To the extent that the Department wishes to overlay the federal definition of "off-highway business use" upon Subpart 30(a)(8), it has not shown that the federal scheme it champions interacts with or otherwise guides the "used for nonhighway purposes" exemption provided in Indiana's Special Fuel Tax. The Department anchors its analysis in Section 62 of the special fuel tax statute, but the reference to federal law in Section 62 is limited. On its face, it serves only to provide an exception to an otherwise narrow provision prohibiting the use of dyed fuel on public roads. Section 62 provides, in

14

relevant part:

> No person shall operate or maintain a motor vehicle on any public highway in Indiana with special fuel contained in the fuel supply tank for the motor vehicle that contains dye or a marker, or both, as provided under section 31 of this chapter. *This provision does not apply . . . to a person that qualifies for the federal fuel tax exemption under Section 4082 of the Internal Revenue Code* and that is registered with the department as a dyed fuel user.

IND. CODE § 6-6-2.5-62(c) (2017) (emphasis added). By its very terms, Section 62 places no limits on and has no direct connection to the nonhighway purposes exemption in Subpart 30(a)(8). The Department therefore needs another statutory hook — and it has not provided one.[6]

Because the Department cannot connect the provisions, the federal legal regime it invokes appears to have no bearing on the question before the Court. The Department offers no explanation or support for its assertion that that provision "implement[s]" the "federal system within" 26 U.S.C. § 4082 or "incorporate[s]" federal law.[7] (Resp't's Br. Supp. Summ. J. at 5, 11.) That is, the Court is unable to trace a textual connection from the nonhighway purposes exemption to federal law. Nor is it clear to the Court that one exists elsewhere from the provisions cited by the parties. To the extent that Indiana state law and federal law are conjoined in relevant part, it is not the Court's job to search for a connection. *See Crystal Flash Petroleum, LLC v. Indiana Dep't of State Revenue*, 45 N.E.3d 882, 886 n.7 (Ind. Tax Ct. 2015) (indicating that the Court will not resolve an issue when its proponent fails to provide sufficient legal

---

[6] At one point in its briefing, the Department references Section 31 as a source of state law implementing 26 U.S.C. § 4082. (*See* Resp't's Br. Supp. Summ. J. at 5.) This reference appears to be an error as Section 31 is silent and does not mention any federal statutes. *See* IND. CODE § 6-6-2.5-31. To the extent it is not an error, the Department does not develop this argument.

[7] The Department also does not explain how or why it believes the "off-highway business use" exemption is incorporated into 26 U.S.C. § 4082. The Court is unable to trace such a connection.

15

analysis). If an applicable statute expressly exists, then the Department should have charted the path for the Court. *See id.* As far as the Court can tell, nothing in the statute conditions the nonhighway purposes exemption on federal law as the Department hopes.

### III. The exemption is not limited to dyed fuel.

The Department's final claim is that the Subpart 30(a)(8) exemption applies only to dyed fuel. (Resp't's Br. Supp. Summ. J. at 4.) The claim is grounded in Section 31 of the special fuel tax statute, which mandates that fuel exempted under Subpart 30(a)(8) have dye added to it when it is withdrawn from a terminal or refinery rack. In the Department's view, the requirement to dye exempt fuel is a precondition for exemption.

The Court disagrees. The Department misreads Section 31 as a biconditional ("if and only if") statement. Section 31 purports only to regulate the color of exempt fuel and provides that "[s]pecial fuel exempted under section 30(a)(8) of this chapter shall have dye added to it at or before the time of withdrawal at a terminal or refinery rack." IND. CODE § 6-6-2.5-31(a) (1995). As such, Section 31 is a simple conditional ("if-then") statement, operating only in one direction. Properly understood, it means: *if* fuel is exempted under Subpart 30(a)(8), *then* it shall be dyed. Its conditional logic does not work in reverse. That is, Section 31 does not say that the exemption may be granted *if, and only if*, the fuel is dyed. It simply imposes a requirement on fuel once it has been exempted. It does not condition the Subpart 30(a)(8) exemption on dyeing.

This reading is confirmed by the very next section of the special fuel tax statute, Section 32. That provision specifically addresses the application of the Subpart 30(a)(8) exemption to fuel that has been taxed but not dyed. It states:

16

> Special fuel tax that has been collected by a supplier on special fuel used for an exempt purpose, including . . . pretaxed exempt fuel under section 30(a)(8) of this chapter, but *which was not dyed or marked, or both, in accordance with section 31* of this chapter, shall be refunded by the department to the user . . . upon presentation of proof of exempt use by the end user . . . .

IND. CODE § 6-6-2.5-32(a) (1995) (emphasis added). By its very terms, Section 32 expressly speaks to the treatment of fuel exempted under Subpart 30(a)(8) but not dyed as required by Section 31. It unequivocally provides that any Special Fuel Tax paid on such fuel "shall be refunded" to the user if the user proves the fuel was used for an exempt purpose. In so doing, Section 32 confirms that the nonhighway purposes exemption of Subpart 30(a)(8) is not conditioned on the dye requirement in Section 31.[8] In practice, Section 31 and Section 32 establish two pathways for the nonhighway-use exemption: a prospective dyed-exempt-fuel pathway under Section 31 and a retroactive-refund pathway under Section 32 for undyed fuel that was taxed at purchase and later used for an exempt purpose. Section 32 unambiguously contemplates that undyed special fuel "used for nonhighway purposes" qualifies for exemption and refund. IND. CODE § 6-6-2.5-32(d). The Department's contrary position finds no support in the statutory text.

**CONCLUSION**

In summary, the resolution of this case turns on the plain and ordinary language of Subpart 30(a)(8) and the broad "used for nonhighway purposes" exemption outlined therein. The plain meaning of the language demonstrates that uses of special fuel

---

[8] The Department appears to argue that Section 32 applies only to certain other exemptions specified in Section 30 but not to the nonhighway purposes exemption in Subpart 30(a)(8). (Resp't's Br. Supp. Summ. J. at 11–13.) The Department does not explain its argument, and the Court cannot discern any textual foothold for the contention.

unrelated to or not involving public roads are exempt from the Special Fuel Tax, which includes special fuel used to propel motor vehicles along private, nonhighway surfaces.

\* \* \* \*

For these reasons, the Court GRANTS summary judgment in UPS's favor in part and DENIES the Department's motion for the same. The Court today only decides that private roads, such as the Private Roads described in the parties' stipulations, are included within the Subpart 30(a)(8) "nonhighway purposes" exemption but does not decide whether and to what extent UPS is entitled to a refund for either tax year. (*See* Jt. Stip. at 1.) Under separate cover, the Court will schedule a case management conference with the parties to develop a case management plan regarding any and all issues that have survived summary judgment.

SO ORDERED this 22nd day of April 2026.

_____
Justin L. McAdam
Judge, Indiana Tax Court

Distribution:
Maggie L. Smith, Darren A. Craig, Daniel Mudd, Lydia Golten, Michelle R. Wyatt